[No. 14546. *En Banc.* December 9, 1918.]

## THE STATE OF WASHINGTON, *Appellant,* v. TWENTY BARRELS OF WHISKEY, *Respondent.*[1]

TRIAL (157)—BY COURT—FINDINGS AND CONCLUSION—CONSTRUCTION AND OPERATION. Under Rem. Code, § 368, providing that findings of the court upon the facts shall be deemed a verdict, the judgment must accord with the findings, which have the effect of a special verdict and control inconsistent conclusions of law.

INTOXICATING LIQUORS (53)—SEARCHES AND SEIZURES—RECLAIMING SHIPMENT—EXPIRATION OF PERMIT. After a shipment of intoxicating liquor to a druggist has been seized as contraband, the time limit for delivery having expired, the shipper cannot rescind the sale, interrupt the transit, and claim the liquor for reshipment out of the state, in view of Rem. Code, § 6262-17, providing that the permit shall be void at the expiration of thirty days, and making it . unlawful for the carrier to transport any liquor without a valid permit.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered October 9, 1917, upon findings in favor of the defendants, ordering the return of intoxicating liquors seized, after a trial to the court. Reversed.

*Alfred H. Lundin, Frank P. Helsell,* and *Joseph A. Barto,* for appellant.

*Jay C. Allen,* for respondent.

HOLCOMB, J.—The police department of Seattle, pursuant to a search warrant, on May 11, 1916, seized

[1]Reported in 176 Pac. 673.

fifteen barrels of whisky at the Pacific Coast Steamship Company's dock, consigned to J. J. Kelly Drug Company, Seattle. Before the justice of the peace, Louis Tauggig & Company claimed ten barrels of the whisky, and Fleischman Clark Company claimed the other five barrels. On January 25, 1917, the justice court ordered the liquor destroyed. The claimants appealed to the superior court, where there claims were upheld and the liquor ordered returned to them, on October 9, 1917. The trial court made findings of fact and conclusions of law and entered judgment.

The state prosecutes this appeal, assigning errors in the court's making the three conclusions of law and in granting judgment in favor of claimants. There is no statement of facts, bill of exceptions, or exceptions to the findings of fact in the record. The findings of the trial court must therefore be presumed to be correct. The findings of fact correspond with the verdict of the jury. In Rem. Code, § 368, it is stated that "The finding of the court upon the facts shall be deemed a verdict." While it is proper practice to make separate conclusions of law, yet the findings of fact must be considered as controlling the conclusions of law, and the judgment must accord with the findings; and if it does so accord, it is immaterial that it is inconsistent with the conclusions of law. The findings of fact must be given the force of a special verdict, and the conclusions of law that of a general verdict. A special verdict controls the general one. *Gerhard v. Worrell*, 20 Wash. 492, 55 Pac. 625.

Findings Nos. 4, 5, 6, and 7 state in substance that the county auditor of King county, on April 6, 1916, issued a large number of liquor permits to J. J. Kelly Drug Company; that a number of these permits were sent to claimants; that each barrel of whiskey had one of these permits attached to it in a

conspicuous place, and was marked in plain letters, "This package contains intoxicating liquors," and all of the whiskey was consigned by the claimants to J. J. Kelly Drug Company, Seattle, Washington; that the shipments of the whiskey made by claimants were received and accepted by the Pacific Coast Steamship Company in San Francisco for transportation to Seattle. (8) That, in making the sales and shipping the whiskey, claimants relied upon the permits. (9) That J. J. Kelly paid nothing on account of the purchase of the liquors. (10) That news of the police's wrecking J. J. Kelly Drug Company reached claimants May 8, 1916, when for the first time they learned that the whiskey was about to be used unlawfully; that thereupon they immediately rescinded the sale and notified the Pacific Coast Steamship Company to stop the goods in transit and return the whiskey to them; that no part of the whiskey had been delivered to J. J. Kelly Drug Company, but it was in possession of the steamship company and was in transit. (11) That the steamship company did stop the goods in transit and held the same in its possession for the sole purpose of returning it to the shipper. (12) That at no time subsequent to May 8, 1916, was any of the whiskey intended to be kept in the state of Washington, nor was it out of the possession of the steamship company as common carrier of interstate commerce, but it was held for the sole purpose of re-transporting it to San Francisco; that police officers seized the whiskey on May 11, 1916, while at Pier D, Seattle. (13) Claimants appeared before the justice court and made claim to the whiskey so shipped by them. (14) That the value of the whiskey at the time of seizure was $817.83 for the ten barrels, and $375.25 for the five barrels. (15) That at no time was any of

the whiskey kept in the state of Washington for the purpose of sale, barter, exchange, giving away, or for any purpose contrary to the laws of Washington, but was in the state in the possession of a common carrier in transit for the purpose of being returned to the state of California.

It does not appear that the whiskey had been relabeled for San Francisco, but it was addressed to J. J. Kelly Drug Company, Seattle, Washington. The permits attached were issued April 6, 1916. Section 17, ch. 2, Laws of 1915, p. 12 (Rem. Code, § 6262-17), provides that any registered druggist or pharmacist actually engaged in business within the state, desiring to transport or ship any intoxicating liquor within the state, shall first secure from the county auditor a permit therefor, which permit can only be used for one shipment "and shall be void after thirty days from the date of issue." It is manifest from this statute that the permits were void on May 6, 1916, and in legal effect as though the shipments had no permits. Such being the case, the liquor was contraband—subject to seizure, forfeiture and destruction after May 6, 1916, at any place in the state of Washington, while in transit. The statute does not provide that claimants may obtain a permit for the purpose of reshipping the liquor out of the state, even should we hold that the sale was properly rescinded. Section 18, ch. 2, Laws of 1915 (Rem. Code, § 6262-18), makes it unlawful for any transportation company "to knowingly transport or convey any intoxicating liquor within this state, without having a permit issued by the county auditor for the transportation of such intoxicating liquor affixed in a conspicuous place to the parcel or package containing the liquor." This does not mean a void permit.

13—104 WASH.

In *State v. Great Northern R. Co.*, 101 Wash. 464, 172 Pac. 546, we said:

"To hold that the date of the shipment, and not the date of its apprehension by the officer, shall determine whether the goods were being transported within the period of time fixed by the permit would be to shift upon the officer a burden that would effectively prevent in most cases a seasonable enforcement of the law. . . . . The facts concerning the date of the shipment, the length of time in transit and the lines over which it had been routed, all rest with the shipper and the carrier. The officer has no means of acquiring them, but, under the principle contended for by appellants, must make the seizure at his peril, notwithstanding the self-evident fact that the goods were in transit by virtue of a permit that *prima facie* afforded the carrier no lawful authority for their transportation. Under such circumstances, it is just as unreasonable to assume that the officer could effectually enforce the law, as it would be unjust to censure his dereliction of duty. Clearly, it was the purpose of the legislature in making the permit void when the allotted time had elapsed, to facilitate, rather than to hinder and delay, the enforcement of the law."

The seller of any goods which may be devoted to an illegal use or a dangerous object should have the legal right, which courts probably would declare, to rescind the sale, interrupt the transit, and reclaim the possession of the goods before reaching the intended buyer, on learning that the goods are to be devoted to such illegal or dangerous use. But he must act promptly on learning of the illegal intention of the buyer, and before the lawful authorities have interposed under the police power of government and seized the goods. After such seizure under valid proceedings, it is too late for the seller to interrupt the carriage and delivery by rescinding the sale, no matter how worthy the purpose in so attempting.

Here the sale was lawfully made and carriage of the goods lawfully commenced under the license of permits required by law which would expire on May 6. After such expiration and before delivery of the goods to the buyer, the state discovered the illegal purpose of the purchase and interposed its strong arm before the seller had rescinded the sale and retaken the goods. They were the subject of seizure before delivery to an illegal buyer.

Claimants cannot insist that the whiskey was an intended sale and shipment but that, in event the police authorities seized it, they would be entitled to immunity and a return of the whiskey because they had rescinded the sale. Such a holding would plainly evade the purposes of the law. The whiskey was contraband at the time claimants attempted to rescind. This is not a criminal prosecution against individuals, but a *rem* proceeding against contraband goods. If the whiskey is contraband, it matters not whether the owners are in California or in this state. They cannot now have immunity for the goods because they rescinded the sale at a time when the shipment was unlicensed and contraband.

The judgment not being in accord with the law and the facts, it must be reversed. It is so ordered.

MITCHELL, J., concurs.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur in the result.

MACKINTOSH, J., took no part.