[No. 31417.   Department Two.   January 20, 1951.]

*In the Matter of the Estate of* PETER BODVIN, *Deceased.*[1]

*Wernette & Dellwo* and *Willard J. Roe,* for appellants.

*Norman L. Schwalb,* for respondent.

HAMLEY, J.—The principal beneficiaries under the will of Peter Bodvin, deceased, filed a petition in this probate pro-

[1]Reported in 226 P. (2d) 878.

ceeding, asking in effect that the executor be required to include additional assets in the inventory of the estate, that he be discharged as executor, and that he be required to show cause why this relief should not be granted. An order to show cause was duly issued. The matter came on for hearing, at the close of which the trial court announced that the relief prayed for would be denied. Petitioners then filed a motion for reopening and continuance, and argument was had on this motion. The trial court thereafter entered an order denying the motion for reopening and continuance, and denying the relief prayed for in the petition. Petitioners have appealed.

The petitioners are four sons and daughters of Peter Bodvin. The executor, Leo Bodvin, is also a son of the decedent.

The pertinent facts, as alleged in the petition, may be summarized as follows: Peter Bodvin had been of unsound health for many years prior to his death on June 22, 1949. He required constant care by his sons and daughters, with whom he resided. Arrangements were made in March, 1949, for him to move from the home of his daughter, Margaret Binns, to the home of his son Leo. On March 15, 1949, Peter transferred to Leo all of his interest in a certain contract to sell real estate, upon which there was then an unpaid balance of approximately thirty-eight hundred dollars.

In consideration of this transfer, Leo, on that day, signed a contract under which he agreed to pay all expenses for Peter's care, including board and lodging, hospital expenses and doctor bills during the remainder of Peter's life, and to see that Peter was "well cared for in every respect."

This contract, which is set out in the petition, also provides:

"I Further Agree that in the event of your death before said money is all used up, allowing a liberal amount for the expenses above enumerated, that I will pay the unpaid balance on said contract as you may direct, or in equal shares among your children, including myself."

Pursuant to the agreement referred to above, Peter moved in with Leo, and, except for the time Peter was in a hospital, lived with Leo until the former's death on June 22, 1949.

Leo sold the real-estate contract which had been transferred to him, for approximately $3,400. He also came into possession of cash and savings deposits belonging to Peter, in the sum of $1,461.90, making a total of at least $4,861.90 of Peter's property which came into Leo's possession. The inventory which Leo filed in the estate lists cash in the sum of $1,412.90 This leaves a balance of $3,449, from which should be deducted such expenses as Leo incurred between March 15, 1949, and June 22, 1949, in caring for Peter. Since these expenses could not have equaled $3,449, petitioners urged that Leo should show cause why the additional assets have not been included in the inventory, and why he should not be discharged as executor.

This concludes the allegations of the petition. The executor presented evidence at the hearing, to the effect that the contract of March 15, 1949, between Peter and himself, had been rescinded or abandoned, and a new contract, in substitution of the original agreement, had been entered into. The executor asserted that, under this new arrangement, he, Leo, was to retain the real-estate contract which had been assigned to him, without being required to make any distribution of the proceeds remaining at the time of Peter's death. The new arrangement, according to Leo, also contemplated that he would pay for Peter's normal living expenses for the rest of the latter's life. Since Leo was being given outright ownership of the real-estate contract, it was also agreed, according to Leo, that he should be eliminated as one of the beneficiaries of Peter's life insurance policy and of his will.

The evidence shows that Leo was thereafter eliminated as a beneficiary of the life insurance policy. The evidence also shows that Peter thereafter revoked a will in which Leo had been named as one of the beneficiaries, and made a new will under which Leo received no bequest or devise. This new will, dated June 9, 1949, is the one being probated in this estate proceeding, and under which petitioners gain their standing as beneficiaries. It provides, in part:

"FIRST: I hereby provide that all debts owed by me be paid as soon as possible including reimbursement to my son,

Leo Bodvin, for all expenses incurred by him in taking care of me from the time I came to his home, with the exception of board and room and normal living expenses, provisions having already been made by me for those expenses. . . .

"THIRD: I have provided for my sons, RAYMOND BODVIN and LEO BODVIN, by devise of real estate and make no other provision for bequest to them.

"FOURTH: I give, bequeath and devise all the rest, residue and remainder of my estate, whether real, personal or mixed and wheresoever situated, in equal shares to my remaining children, whose names are: GEORGIA HEYWOOD, MARGARET BINNS, EDWARD BODVIN, and LAWRENCE BODVIN."

Petitioners developed some testimony tending to show that Peter may not have had the mental capacity to enter into the contract of March 15, 1949, with Leo; to assign the real-estate contract to Leo; to rescind or abandon the contract of March 15, 1949; to enter into a new oral agreement with Leo; or to execute the will of June 9, 1949, under probate in this estate. However, petitioners were not challenging the contract of March 15, 1949, or the assignment of the real-estate contract, and they were not contesting the will. They were, in fact, claiming under both the contract and the will. The testimony as to Peter's mental capacity, therefore, was material and relevant only with respect to petitioners' attack upon the rescission or abandonment of the contract of March 15, 1949, and the purported subsequent oral agreement.

The order of the trial court appealed from incorporates several findings of fact. These are, in substance, that, on March 15, 1949, Peter and Leo entered into a written contract, as described in the petition; that this contract was rescinded and destroyed on or about March 16, 1949; and that under the new arrangement then entered into, Leo had no obligation to pay back into Peter's estate any proceeds of the real-estate contract remaining at the time of Peter's death.

All but one of appellants' assignments of error attack, on various grounds, the trial court's finding that the contract of March 15, 1949, was validly rescinded or destroyed. In support of these assignments, appellants argue that rescission of the original contract was not established by the

necessary degree of proof; that the rescission was ineffective because Leo did not restore the *status quo* by reassigning the real-estate contract to Peter; that Leo is not entitled to rescission because, by reason of his efforts to obtain a pension for Peter, he does not come into court with clean hands; that Peter did not have the requisite mental capacity to rescind; that such rescission was obtained by duress; and that it was not supported by consideration.

Respondent resists these contentions. He also argues that, even granting that the rescission was ineffective, appellants still would not be entitled to the relief sought in their petition. The first question presented is, therefore, whether appellants are entitled to the relief they request, assuming that the rescission was ineffective, and that the contract of March 15, 1949, was, as appellants contend, in effect when Peter died.

The contract in question consisted of an assignment to Leo of the purchaser's interest in a real-estate contract, and certain undertakings by Leo in consideration of that transfer. One of these undertakings was that, in the event of Peter's death before the proceeds of the real-estate contract were fully expended in caring for Peter, Leo would, after a liberal allowance to himself for such expenses,

" . . . pay the unpaid balance on said contract as you [Peter] may direct, or in equal shares among your children, including myself."

The real-estate contract was therefore not assigned to Leo absolutely, but in trust, with provision that Leo should use the proceeds to pay the expense of caring for Peter and, at Peter's death, apply the balance as provided in the trust agreement. Peter reserved no right, title, or interest in the real-estate contract to himself, but only the right to designate the beneficiaries of any trust funds remaining at the time of Peter's death.

Peter left no direction that Leo should pay the balance into the estate. There is no evidence to indicate that Peter left a direction as to the payment of such balance to any person or in any manner. The residuary clause of the will of June 9, 1949 (paragraph 4 of the will, quoted above),

could not be so regarded, since it purports only to dispose of property of the estate. We have already seen that the real-estate contract was not a part of Peter's estate at the time of his death. This is confirmed by Peter's recital in paragraph 3 of the will that he had already provided for Leo "by devise of real estate." The trial court found that Peter was here referring to the assignment of the real-estate contract. There is no evidence in the record to the contrary.

■ Even if the residuary clause could be regarded as a direction to Leo to pay the balance to appellants, it would not warrant inclusion of such balance in this estate. The fact that the power of appointment is exercised by means of a provision in a will does not operate to bring such trust property into the estate. *Pope v. Safe Deposit & Trust Co.,* 163 Md. 239, 161 Atl. 404; *Riggs v. Barrett,* 308 Ill. App. 549, 32 N. E. (2d) 382; 33 C. J. S. 1074, Executors and Administrators, § 121.

In the absence of directions from Peter as to the distribution of the balance remaining in the trust fund, it would have been Leo's duty, under the March 15, 1949, contract, to pay such balance to the children of Peter, including himself, in equal shares. That duty could not be enforced by requiring Leo to pay such balance into the estate, since it was not an asset of the estate and was not chargeable with the costs and debts of the estate. Moreover, had this been done, and assuming such balance had not been depleted by estate costs which Peter never contemplated in setting up the trust, such procedure would have resulted in depriving two of the six beneficiaries of such trust funds from any participation therein. Those funds, by the terms of the agreement of March 15, 1949, were to be distributed to all six children of Peter, in equal shares. Two of those children, however (Leo and Raymond), were not beneficiaries under the will, and would have received no part of the trust fund balance if it had been brought into the estate.

If appellants have any right to the unexpended proceeds of the real-estate contract, it is, therefore, not as beneficiaries under Peter's will, but as third party beneficiaries or *cestuis que trustent* under the contract of March 15, 1949.

This is assuming, of course, that such contract was in effect at the time of Peter's death, a question which we do not decide. We therefore hold that whether or not the trial court erred in finding that the contract of March 15, 1949, had been rescinded is wholly immaterial, since, in any event, appellants would not, under that contract, be entitled to an order requiring Leo to bring additional assets into this estate.

■ Where a judgment or order is correct, it will not be reversed because the court gave a wrong or insufficient reason for its rendition. *Buchan v. Knight,* 147 Wash. 659, 267 Pac. 43; *In re Improvement of Rockwood Boulevard,* 170 Wash. 64, 15 P. (2d) 652.

■ The only other assignment of error relates to the denial of the motion for a reopening and continuance. No argument in support of this assignment was presented in appellants' brief. We accordingly regard such assignment as having been abandoned. *Gephart v. Stout,* 11 Wn. (2d) 184, 118 P. (2d) 801; *McCoy v. Courtney,* 30 Wn. (2d) 125, 190 P. (2d) 732; *In re Gensburg v. Smith,* 35 Wn. (2d) 849, 215 P. (2d) 880.

The order appealed from is affirmed.

SCHWELLENBACH, C. J., ROBINSON, MALLERY and GRADY, JJ., concur.