[No. 31670. *En Banc.* October 15, 1951.]

FRANK S. BAYLEY, *as Executor, et al., Respondents,*
v. ROBERTA L. LEWIS, *Appellant.*[1]

[1] Reported in 236 P. (2d) 350.

*Heideman & Flanagan* and *Glen E. Duncan,* for appellant.

*Bayley, Fite, Westberg & Goodin,* for respondents.

HAMLEY, J.—The principal legatees of an estate brought this action to recover from Mrs. Roberta L. Lewis the consideration they paid to her in settlement of a threatened will contest. The executor of the estate had also been named as one of the plaintiffs, but was later dismissed from the action upon stipulation of the parties. Mrs. Lewis denied the allegations of the complaint and, by cross-complaint, sought recovery of additional consideration alleged to be due under the settlement contract. After a trial to the court without a jury, judgment was entered for plaintiffs, and defendant's cross-complaint was dismissed. Defendant has appealed.

The estate in question is that of Clara M. Clayton, who died in Seattle on November 22, 1948. She left a will by which one thousand dollars was given to her daughter, Mrs. Lewis, the appellant herein. A number of bequests were left to other relatives and friends, but the bulk of the estate was left to Wayne McDonough, Mrs. Josephine Seeley, Alfred D. Hendrickson, and William Hendrickson, Jr., the four respondents herein.

Mrs. Lewis threatened to contest the will. A settlement of her claims was then negotiated by the executor, evidenced by a written agreement executed by Mrs. Lewis and respondents on December 7, 1948. Under this contract, Mrs. Lewis agreed to abandon and forego the institution of a will contest and to release and acknowledge full settle-

ment and discharge of all claims which she might·have against the estate except as to the one-thousand-dollar bequest.

The consideration to be paid to Mrs. Lewis under this agreement consisted of thirty-five hundred dollars and four pieces of jewelry. The cash was to be paid as follows: Two thousand dollars upon the execution of the agreement, contributed by all respondents; one thousand dollars, contributed by Mrs. Seeley, Hendrickson and Hendrickson, Jr., to be paid at the time the estate was to be distributed; and five hundred dollars, contributed by McDonough "as soon as the same can be secured from the estate." The four pieces of jewelry had been bequeathed, under the will, to Mrs. Seeley. Under the settlement contract, she authorized the executor to deliver these items of jewelry to Mrs. Lewis "as soon as this agreement has been duly executed" by appellant.

At the time the agreement was executed, Mrs. Lewis was paid two thousand dollars and given possession of three of the items of jewelry. The fourth item, a two-stone diamond ring, had not been appraised and Mrs. Lewis therefore returned to her home in San Francisco without it. On February 14, 1949, the executor shipped the ring to a San Francisco bank for delivery to Mrs. Lewis. Before receiving notice of this shipment, she instructed her lawyer in Seattle to notify the parties that his client elected to rescind the settlement contract. This notice was served upon the executor on February 18, 1949, and a copy was mailed to each respondent. Mrs. Lewis then refused to accept the ring, and it was subsequently returned to the executor.

The notice referred to does not specify the grounds for rescission. It developed at the trial of the instant action, however, that the ground relied upon was failure to make delivery of the two-stone diamond ring immediately upon execution of the settlement contract. When the notice of rescission was served upon the executor there was tendered, at the same time, a certified check in the sum of two thou-

sand dollars, the three pieces of jewelry which had been delivered to appellant, and an executed copy of the settlement contract. The executor rejected the notice of rescission and tender on the ground that he was not a party to the settlement contract and on the further ground that the certified check was not legal tender of the two thousand dollars. On March 1, 1949, respondents Seeley, Hendrickson and Hendrickson, Jr., wrote to Mrs. Lewis, confirming the action of the executor in refusing the tender.

Mrs. Lewis instituted a will contest in May, 1949. The grounds urged were undue influence, lack of testamentary capacity, fraud and duress, and failure to comply with statutory requirements relative to the execution of wills. The executor served and filed an answer which included an affirmative defense that Mrs. Lewis had entered into the settlement contract of December 7, 1948. The latter alleged in her reply that this contract had been rescinded.

The will contest came on for trial before Judge Donald A. McDonald on October 31, 1949. Mrs. Lewis' demurrer to the affirmative defense was first argued. During the course of this argument her counsel indicated that his client was then willing to accept her benefits under the settlement contract and discontinue the will contest. Counsel for the executor then asked for a recess so that Mrs. Seeley and McDonough, who were present in the court room, could be consulted. Following this consultation, the executor and his counsel and counsel for Mrs. Lewis conferred with Judge McDonald in chambers.

There was discussion in chambers as to what further tender the executor should make in order to constitute compliance with the settlement contract on behalf of the principal legatees. The executor apparently took the position that the remainder of the cash consideration was not then due and that it was not necessary to tender the ring because Mrs. Lewis had served notice of rescission. In response to this view respecting tender of the ring, counsel for Mrs. Lewis stated that his client was no longer relying on rescission and would withdraw her reply which stated

a contrary position. The court then said that the executor would have to produce the ring. The executor stated that he would have the ring available at twelve o'clock noon that day. After the conference in chambers had concluded, but before the trial was resumed, counsel for the executor asked counsel for Mrs. Lewis what he intended to do. The latter replied, "We are going to take a nonsuit."

When the trial resumed, counsel for the executor gained the attention of the court and the following statements were made:

"MR. KAHIN [Counsel for executor]: If Your Honor please, we wish to join in the rescission of this agreement at this time that Counsel has taken the position he has rescinded, and we will exert all of our legal rights as against the party rescinding this contract in procuring restitution of what has been received. We agree to the rescission.

"MR. FLANAGAN [Counsel for Mrs. Lewis]: Well, Your Honor, it's not right that the rescission as I stated in your chambers has been withdrawn, our offer to rescind, and it is our position that by relying on the contract and by tendering the ring under the contract that the Counsel for the adverse parties to this lawsuit have reinstated the contract or waived any offer of rescission, and we are therefore relying on the contract, and in relying on the contract as a part of it we are taking at this time a voluntary nonsuit on the will contest."

A voluntary nonsuit without prejudice was thereupon granted, with taxable costs. As the statute of limitations had then run against the will contest, this was, in effect, a nonsuit with prejudice. Later that day, Mrs. Lewis served a written demand upon the executor for delivery of the two-stone diamond ring. The ring was never delivered to her, and the principal legatees did not pay the fifteen-hundred-dollar balance called for under the settlement contract. Instead, they instituted this action for recovery of the money and jewelry which had been given to Mrs. Lewis in part payment of the consideration specified in that contract.

The facts recited above are in greater detail than as set forth in the court's findings of fact, but are not in substan-

tial disagreement with the court's findings. To the extent that there is any disagreement, we find that the preponderance of the evidence supports the facts as summarized in this opinion.

In our view, it was error, on these facts, to enter judgment on respondents' complaint and to dismiss the cross-complaint. In saying this, we assume, as respondents contend, that appellant had no valid ground for attempting to rescind the settlement contract.

While respondents argue to the contrary, an examination of the complaint herein indicates that this action was based originally upon the theory of mutual rescission, calling for return of the consideration.

There were only two circumstances which could have given rise to rescission—appellant's "notice of rescission," dated February 19, 1949, and her later action in instituting the will contest. Regarding either of these acts as substantial breaches of the contract, respondents were then entitled to rescind or abandon the contract. *Campbell v. Hauser Lbr. Co.*, 147 Wash. 140, 265 Pac. 468; *Marrazzo v. Orino*, 194 Wash. 364, 78 P. (2d) 181; 2 Restatement, Contracts 750, § 397.

Respondents, however, did not elect to rescind or abandon on account of either of such breaches. They evidenced a contrary intent when they expressly rejected the notice to rescind and when they stood by while the executor pleaded the settlement contract as an affirmative defense. It was not until five and a half months after the will contest had been instituted, and after appellant had advised respondents that the breach of contract was being terminated, that respondents, following a recess during that trial, expressed an intention to rescind. It was then too late. Rescission must be prompt upon discovery of the facts warranting such action. *Thomas v. McCue*, 19 Wash. 287, 53 Pac. 161; *Thompson v. Rhodehamel*, 71 Wash. 24, 127 Pac. 572; *Grosgebauer v. Schneider*, 177 Wash. 43, 31 P. (2d) 90.

The same result is reached if either of appellant's acts—serving her "notice of rescission," or instituting the

will contest—is regarded as an offer for mutual rescission by agreement of the parties. An offer to rescind a contract must be accepted before the contract can be considered terminated. *Parks v. Elmore*, 59 Wash. 584, 110 Pac. 381; *Roethemeyer v. Milton*, 177 Wash. 650, 33 P. (2d) 99. Here, as indicated before, the "offer" to rescind was once expressly rejected, and never accepted until after the offer was withdrawn. Therefore no agreement for mutual rescission came into existence.

During the course of the trial, the court suggested that the real theory of the action was not for mutual rescission, but for money had and received, based upon total failure of consideration. Counsel for respondents, agreeing with this view, thereupon moved to amend their pleadings accordingly. An objection was made and sustained, and the trial proceeded without an amendment of the pleadings.

At the conclusion of the trial, the court held that the institution of the will contest constituted a breach amounting to a repudiation of the contract and a complete failure of consideration therefor. The court concluded, therefore, that appellant wrongfully held the money and jewelry which had been delivered to her under that contract.

The trial court's ruling was, in essence, that judgment should be granted on the basis proposed in the rejected trial amendment—money had and received now due and owing because of a complete failure of consideration. That is the interpretation which respondents place upon the conclusions of law, and that is the theory upon which they rely on this appeal.

We pass without discussion the question of whether respondents should, in any event, be permitted to recover upon a theory advanced for the first time in a rejected trial amendment of the complaint. However that may be, recovery should not have been permitted on this theory, because there was not, as claimed by respondents and found by the trial court, a complete failure of consideration.

When appellant instituted the will contest, she breached the covenant of the contract under which she agreed not

to institute such a contest. She did not breach, and was incapable of breaching, the other covenant of the contract, under which she released and acknowledged full settlement and discharge of all claims which she had against the estate except as to the one-thousand-dollar bequest. Appellant could not breach that covenant because it was already fully executed on her part. The contract with her signature attached constituted a full, binding, and immediately effective release and discharge, extinguishing her cause of action. *Michigan etc. Ins. Co. v. O-W R. & Nav. Co.*, 32 Wn. (2d) 256, 201 P. (2d) 207; 2 Restatement, Contracts 757, § 402 (1), and comment a.

The correctness of this view is demonstrated by what transpired. Although appellant had breached her covenant not to bring the action, the executor pleaded, as an affirmative defense, the contract containing this covenant releasing and discharging the estate. It is therefore evident that appellant's breach of the covenant not to sue did not amount to a total failure of consideration. There was still left the binding release and discharge upon which the executor did not hesitate to rely.

In addition, the partial breach was itself terminated by appellant when she indicated that she would no longer claim that the agreement had been rescinded, and would take a voluntary nonsuit. This was done before respondents indicated that they would "join in the rescission." Respondents were thereby saved from the expense and hazard of continuing with the will contest. They had suffered some damage due to appellant's breach up to that time, but this action was not brought to recover damages for breach of contract, and no evidence was received on that theory.

It follows from what has been said that, whether regard be had to respondents' original theory of mutual rescission, or their later-developed theory of money had and received because of total failure of consideration, no cause of action was established.

This brings us to appellant's cross-complaint, under which she seeks a judgment in the sum of fifteen hundred dollars,

and an order directing respondents to immediately deliver the two-stone diamond ring. The relief prayed for, at least to the extent of the request for an order requiring delivery of the ring, is for specific performance of the settlement contract. The question then arises as to the effect of appellant's partial breach upon her right to now enforce specific performance.

Had appellant's breach continued up to the time this action was brought, there is no doubt that specific performance would have to be denied. A party cannot enforce specific performance of a contract while in default of its terms. *Kiefer v. Carter Contracting & Hauling Co.*, 59 Wash. 108, 109 Pac. 332; *Smith v. Barber*, 97 Wash. 18, 165 Pac. 873.

Here, however, appellant's breach had been terminated prior to the bringing of this action. Respondents received the major portion of the benefits they bargained for under the contract. There was substantial performance of the contract by appellant. It would be inequitable, under the circumstances, to deny specific performance. This conclusion accords with the rule announced in *Packard v. Booth*, 62 Wash. 333, 335, 113 Pac. 774.

The judgment is reversed and remanded, with directions to dismiss the complaint and to enter judgment for appellant on her cross-complaint. The judgment on the cross-complaint should run against respondents according to their respective obligations under the terms of the contract.

ALL CONCUR.

January 9, 1952. Petition for rehearing denied.