[No. 33045. *En Banc.* February 23, 1956.]

THOMAS J. FERRIS et al., *Appellants*, v. DAN BLUMHARDT, *as Executor, et al., Respondents and Cross-appellants.*[1]

[1]Reported in 293 P. (2d) 935.

*Edmund J. Jones*, for appellants.

*Medley & Haugland* and *Dale E. Sherrow*, for respondents and cross-appellants.

OTT, J.—In their first cause of action, Thomas J. Ferris and Evelyn B. Ferris, husband and wife, sought (1) specific performance against the estate of Anna C. Witzig of a contract to make a will in their favor, and (2) restoration to the estate of a gift of five thousand dollars made by Mrs. Witzig in her lifetime to Dan and Bernice M. Blumhardt, husband and wife. In the alternative, by a second cause of action, the Ferrises sought a judgment against the estate of Anna C. Witzig of fifteen thousand dollars for services rendered.

The trial court dismissed the first cause of action, and granted judgment against the estate for two thousand dollars upon the theory of *quantum meruit*, that amount being the court's determination of the value of the services rendered in excess of the value of the property plaintiffs had received from decedents during their lifetime. The Ferrises appeal.

Dan Blumhardt, as executor of the estate of Anna C. Witzig, deceased, and the residuary legatees and devisees cross-appeal, contending that the previous conveyance to the Ferrises of the Witzig home and automobile adequately compensated them for services rendered, and that the trial court erred in granting judgment against the estate.

In 1946, the Ferrises resided in Milwaukee, Wisconsin. Walter J. and Anna C. Witzig resided in Seattle. Mrs. Ferris was a niece of Mr. Witzig. The families were comparative strangers, having met previously on only two or three occasions. In September, 1946, the Ferrises received a letter from Mrs. Witzig in which she commented upon her physical condition, and upon her husband's difficulties due to a growth in his throat, and then stated:

"It's a good thing we have no financial worries and have a very comfortable home. I just said to Walt, now if you folks were here everything would be complete. I'm sorry you folks didn't come here when you left Minneapolis. I am sure there are all sorts of opportunities here for work, and if either you or Tom would care to come out here now and look things over I will send you the fare. . . . I wish you would think this over about coming out here to live for *whoever is with us when we pass on gets what we have*." (Italics ours.)

In response to that letter, both of the Ferrises came to Seattle to "look things over," and then returned to Milwaukee.

October 30, 1946, Mrs. Witzig wrote:

"Walt is getting worse right along from the treatments and at times it is very difficult for him to breathe. The Dr. said he may have to put a tube in his throat so he will be able to breathe more freely. It worries me to be here alone with him that is why I do hope you will come just as soon as you can."

Mr. and Mrs. Ferris and her daughter had moved to Seattle and into the Witzig home by December 15, 1946. Walter Witzig died July 1, 1947. June 3, 1949, Mrs. Witzig deeded her home, worth fourteen thousand five hundred dollars, to the Ferrises. On August 7, 1950, she transferred to Mr. Ferris the title to her 1939 Chevrolet automobile.

In 1944, Mrs. Witzig met Dan Blumhardt, a distant relative. Beginning in 1947, he visited her with some regularity. They became good friends. Mrs. Witzig often visited the Blumhardts at their home in Longview. Since their home was small, she insisted that they buy a larger house. August 6, 1951, she gave them five thousand dollars, with which they made the down payment on a larger home. Mrs. Witzig assisted in selecting this home, and at all times thereafter a room was reserved therein for her which she occupied approximately one third of the time.

Anna C. Witzig died April 20, 1953. By her will, executed June 12, 1952, she made several cash bequests and bequeathed specific personal belongings to persons other than the Ferrises, and left the residue of her estate to the Blum-

hardts. By a codicil executed March 11, 1953, she bequeathed all of her household furniture and furnishings to Evelyn B. Ferris, and confirmed therein the prior conveyance of the home property.

In order to prove a contract to devise, evidence is required which is conclusive, definite, and beyond all legitimate controversy. *Thomas v. Hensel*, 38 Wn. (2d) 457, 230 P. (2d) 290 (1951), and cases cited.

In the instant case, the Witzigs communicated to the Ferrises a written offer to devise, asking in return that the Ferrises furnish continuous companionship and care. That the appellants placed this interpretation upon the offer is indicated by paragraph No. 4 of their amended complaint which states, in part:

" . . . Plaintiffs [appellants] promised to render continuous and constant companionship to the said Witzigs throughout the remainder of the natural lives of the said Witzigs, . . . and Plaintiffs further promised to accept said Witzigs into Plaintiffs' immediate family circle and to take personal care of said Witzigs during said period as Plaintiffs would care for elderly members of their own immediate family without, however, additional financial expense to Plaintiffs; . . ."

There is an inescapable inference that the Ferrises accepted the offer and that a contract existed between them and the Witzigs, from the fact that the Ferrises left their friends and relatives in Milwaukee, moved their family of three to Seattle, where they knew no one except the Witzigs, and, upon their arrival, moved into and remained in the Witzig home, thus commencing performance of the acts requested in the Witzigs' offer. See *Ellis v. Wadleigh*, 27 Wn. (2d) 941, 182 P. (2d) 49 (1947).

Appellants assign error to the making and entering of certain findings of fact adverse to them. These findings were based upon conflicting testimony. We have repeatedly held that the findings of a trial court, entered upon conflicting evidence, will be approved on appeal unless the evidence clearly preponderates against them. *Carroll Constr. Co. v. Smith*, 37 Wn. (2d) 322, 331, 223 P. (2d) 606 (1950). Our

reading of the record convinces us that the evidence does not preponderate against the trial court's findings. Therefore, they must be accepted as the established facts in the case. *McKown v. Davis,* 47 Wn. (2d) 10, 15, 285 P. (2d) 1048 (1955), and cases cited.

From its findings of fact, the trial court concluded with reference to the first cause of action (1) that the Ferrises had "failed to sustain their burden of proof under the First Cause of Action," and (2) that, if there was a contract to devise, the appellants had not shown that the services contemplated had been performed. The findings support these conclusions, but do not support the court's conclusion that no contract to devise ever existed or that the contract was too indefinite for specific performance.

We have held that, where the conclusions of law are not supported by the findings or are inconsistent therewith, the findings will control. *State v. Twenty Barrels of Whiskey,* 104 Wash. 382, 176 Pac. 673 (1918); *Fisher v. Coy Valve Co.,* 138 Wash. 35, 244 Pac. 125, 247 Pac. 966 (1926). See, also, *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673 (1913).

The court's findings support the judgment. When the findings are in accord with the judgment, the inconsistent conclusions of law will be disregarded. See *State v. Twenty Barrels of Whiskey, supra.*

If the judgment of the trial court is based upon an erroneous ground, it will be sustained if correct upon any ground within the pleadings and established by the proof. *In re Bodvin's Estate,* 37 Wn. (2d) 872, 878, 226 P. (2d) 878 (1951); *Portland Ass'n of Credit Men v. Earley,* 42 Wn. (2d) 273, 277, 254 P. (2d) 758 (1953).

The respondents' general denial in answer to the complaint put in issue the implied as well as the express averments of the complaint, and any fact which tended to destroy the appellants' cause of action was provable. *Haveman v. Beulow,* 36 Wn. (2d) 185, 188, 217 P. (2d) 313, 19 A. L. R. (2d) 763 (1950), and cases cited; *Sinko v. Sinko,* 39 Wn. (2d) 246, 250, 234 P. (2d) 1085 (1951), and cases cited.

The continued existence of the alleged contract, which was necessary to the appellants' first cause of action, was put in issue by the general denial.

We hold that the evidence established that, at the inception of the relationship between the Whitzigs and the appellants, there was a contract to devise, but, as the trial court indicated in its conclusions, there was a failure to perform its conditions, and, hence, there was a breach.

In their briefs on appeal and their argument before this court, appellants made no contention that there was any change in the performance required of them or that they tendered less than the offer required, or that the Witzigs, during their lifetime, had agreed, expressly or impliedly, to accept anything less than the full performance of the acts required in their original offer, upon which the promise to devise was predicated. Hence, we are not here concerned with a waiver of any of the conditions precedent to the decedents' obligation to perform.

The offer required that continuous companionship and care be furnished by the Ferrises for the lifetime of the Witzigs. December 3, 1951, Mrs. Ferris enrolled in a business school, and for approximately ten months she was absent from the residence one half of every week day. September 15, 1952, she accepted full-time employment. During all of this time, Mr. Ferris was employed full time. The evidence definitely established that the services required by the offer were not rendered. *Companionship and care cannot be effected by absence.*

The Witzigs' offer requested an act in return for the promise to devise, and thus contemplated a unilateral contract.

1 Restatement, Contracts, 65, § 59, states:

"Except as this rule is qualified by §§ 45, 63, 72, an acceptance *must comply exactly with the requirements of the offer, omitting nothing* from the promise or performance requested." (Italics ours.)

In § 45, p. 53, of the same text, it is said that,

"If an offer for a unilateral contract is made, and *part of the consideration* requested in the offer is given or tendered

by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is *conditional* on the *full consideration* being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time." (Italics ours.)

In ceasing to provide companionship and care, the appellants failed to render the *full consideration* upon which the decedents' promise to devise was conditioned.

A contractual duty is discharged by the unexcused failure of a condition to occur within the time necessary to create a right to immediate performance of the duty. 2 Restatement, Contracts, 746, § 395.

The essential element of the agreement to devise being the furnishing of continuous companionship and care during the decedents' remaining years, the enrollment in the business school and the admitted acceptance by Evelyn Ferris of full-time employment during those years was a material breach, and an unexcused failure of the condition, which discharged the decedent Anna Witzig from any duty to devise.

The appellants' breach commenced December 3, 1951, and continued until the time of Mrs. Witzig's death. They were in continuous default. One in default cannot enforce specific performance of a contract. *Bayley v. Lewis*, 39 Wn. (2d) 464, 472, 236 P. (2d) 350 (1951). Since there was an admitted breach, and no contention of waiver raised, the contractual duty to devise was terminated by the unexcused failure of the condition of full performance. 2 Restatement, Contracts, 746, § 395.

Although the trial court's judgment was not granted upon the ground of abandonment, the court's findings amply support a conclusion that the contract to devise was abandoned by the parties during the lifetime of the decedent. Abandonment of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership. See 1 C. J. S. 4, § 1. A contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by

the other. *Wiegardt v. Becken,* 21 Wn. (2d) 59, 73, 149 P. (2d) 929 (1944).

That the appellants and the decedent, during her lifetime, abandoned the contract to devise is established by the following:

(1) Anna Witzig gave the appellants a deed to her house and title to her automobile on June 3, 1949, and August 7, 1950, respectively. The value of these items represented approximately fifty per cent of her entire estate. This premature grant indicates that the original agreement had been greatly modified, if not entirely abandoned, and, with the remaining acts of the parties, establishes an abandonment as of June 3, 1949.

(2) Although legal documents were prepared at the time of making the deed and transferring title to the automobile, there was no evidence that either of the appellants ever requested the decedent to make a will in accordance with the alleged agreement.

(3) Subsequent to delivery of the deed, Mrs. Witzig paid the Ferrises for their services in redecorating her room, and paid Mrs. Ferris for certain personal services rendered.

(4) During the lifetime of the decedent, the appellants made no inquiry concerning, and exercised no dominion over, any of decedent's property except such as had been conveyed to them.

(5) August 6, 1951, decedent gave five thousand dollars to the Blumhardts. Thereafter, she lived with them approximately one third of the time.

(6) Anna C. Witzig made a will which, by its written terms, indicated that the contract had been terminated at the time the will was executed.

(7) When, after the death of Mrs. Witzig, her will was read to the Ferrises, they did not indicate that there then existed a contract to devise. Instead, by oral statements, they gave credence to the will as read.

The conduct described above, plus the fact that Mrs. Ferris absented herself from the home and ceased to furnish companionship and care, establishes that the parties recog-

nized the abandonment of the contract to devise. Because of the abandonment, the decedent was free to devise the remainder of her property as she saw fit, and as she subsequently did, June 12, 1952.

We hold that the established facts in this case support the conclusion that, in addition to the breach, the contract was abandoned. Having so concluded, the appellants cannot prevail upon their first cause of action, which cause included the request for restoration to the estate of the five-thousand-dollar gift to the Blumhardts.

With reference to the second cause of action, the appellants are entitled to recover, under the doctrine of *quantum meruit*, for the value of such services as they did render to decedent subsequent to the breach and abandonment of the contract.

From the record before us, we hold that the judgment allowed by the trial court amply compensates the appellants for the services thus performed. *Losli v. Foster*, 37 Wn. (2d) 220, 233, 222 P. (2d) 824 (1950).

Assignment No. 4 concerns the exclusion of certain testimony of two witnesses, and the offers of proof with reference thereto. Based upon the offer of proof, the testimony of Lorraine Lambrecht was properly excluded as hearsay. The excluded testimony of Thomas J. Ferris, as shown by the offer of proof, would not have rebutted the testimony of Dan Blumhardt, and its exclusion was therefore not prejudicial. See *Sutton v. Mathews*, 41 Wn. (2d) 64, 247 P. (2d) 556 (1952). We find no merit in this assignment of error.

Appellants' remaining assignments of error are without merit for the reasons above stated.

We find no merit in respondents' cross-appeal.

The judgment of the trial court is affirmed. Since respondents did not prevail upon their cross-appeal, neither party will recover costs.

HAMLEY, C. J., MALLERY, SCHWELLENBACH, and ROSELLINI, JJ., concur.

FINLEY, J. (concurring in the result)—The letter Anna C. Witzig wrote to the Ferrises in September, 1946, is quoted in part in the majority opinion. Giving the language of the letter its ordinary meaning, it seems to me that Anna Witzig *primarily* was advising the Ferrises that employment possibilities were excellent in the city of Seattle, and that, by moving to Seattle, the Ferrises would have a very good opportunity to improve their mode of life substantially and immediately. The letter inferred that living together in the Witzig home in Seattle would be advantageous to both families; and finally, it suggested, I think as a probability rather than a certainty, that *whoever* was living with them would get the property which the Witzigs owned when they passed away. I do not think the language of the letter justifies an assumption (a) that Anna Witzig was to be restricted during her lifetime as to the use, control, and disposition of her property, or (b) that she would be bound irrevocably to leave to the Ferrises all of the property the Witzigs owned on the date of the letter, or the property that Anna Witzig would own at the time of her death. In other words, I do not think the letter clearly established a contract to devise property.

Assuming for the moment, however, that the letter did spell out some contractual obligation on the part of the Witzigs to devise property, I could not agree that Anna Witzig's gift of five thousand dollars to the Blumhardts constituted fraud in violation of her contractual obligations to the Ferrises. I reach this conclusion because the purpose of the gift was to enable the Blumhardts to acquire a larger home so that Anna Witzig could live with them for extended periods of time, and she apparently did so. Certainly, if Anna Witzig had spent five thousand dollars on a world cruise for herself and some congenial companion of her own sex, it would seem to me that nothing in the letter of September, 1946, would have prevented this. The gift to the Blumhardts should be viewed in the same light.

For the reasons indicated, I concur in the result reached by the majority.

Hill, J. (dissenting)—I agree with the majority that there is an inescapable inference that the Ferrises accepted the offer made by the Witzigs in their letters, and that the trial court erred in its conclusion that no contract to devise ever existed or that the contract was too indefinite for specific performance.

The majority, proceeding upon a theory suggested by neither party and never considered by the trial court, concludes that, although there had been a contract to devise, the Ferrises had breached it or both parties to it, Anna Witzig and the Ferrises, had abandoned it. I cannot agree that the seven items, events, or circumstances which the majority says establish an abandonment of the contract have any such effect.

The first, and apparently regarded as the most important, is the fact that on June 3, 1949, Anna Witzig gave the Ferrises a deed to her home. The witness Alford B. Riggs, who took Anna Witzig's acknowledgment to that deed, testified that she said at that time that she was

". . . giving them [the Ferrises] everything anyway and so this was—she was giving this to them at this time so they could, if necessary, get some money to make improvements."

To me, that is a logical explanation—a definite modification for a definite purpose; and, far from evidencing an abandonment, it is in its essence a reaffirmance of the contract.

The second is that the Ferrises never requested Anna Witzig to make a will. It may be that they assumed she had already done so, as we are agreed that she had contracted so to do. If this circumstance has any weight, it is minimal.

The third is that, subsequent to delivery of the deed, Mrs. Witzig paid the Ferrises for certain services—Mr. Ferris for redecorating her room, and Mrs. Ferris for giving her some hypodermic injections. These were not services which the Ferrises had contracted to perform, and, although we might think more highly of them had they performed the services gratuitously, their failure to do so was not a breach or abandonment of their contract.

The fourth is that during the lifetime of Anna Witzig the Ferrises made no inquiry concerning and exercised no dominion over any of her property except such as had been conveyed to them; in short, because they were not "nosey" and presumptuous in using what was Anna Witzig's as long as she lived, they are presumed to have abandoned the contract. This is a definite *non sequitur*.

The fifth and sixth, the gift of five thousand dollars by Anna Witzig to the Blumhardts and the making of a will by Mrs. Witzig that was inconsistent with her contract, do show that she had abandoned the contract, but they certainly are not evidence of abandonment by the Ferrises. They are but part of the overwhelming evidence that Anna Witzig had reached a fixed conclusion that the Ferrises had been adequately compensated and would get no more of her property.

The seventh is that the Ferrises did not mention a contract when the will was read, but said something like " 'Well, that counts us out.' " Mrs. Blumhardt testified that the Ferrises appeared to be disappointed, and, what is more important, she conceded that *Anna Witzig had known they would be disappointed.* I do not believe that a layman's failure to assert his legal rights in such a case, before the funeral and before he has had an opportunity to consult counsel and find out what those rights are, proves very much of anything except that he did not know what to do under the circumstances.

Once the contract was established, the burden of proving that it was abandoned by the parties was on the respondents, and in my opinion they proved only that Mrs. Witzig had abandoned it, which is conceded and is the reason for the lawsuit.

The breach of the contract by the Ferrises relied upon by the majority is predicated upon the fact that Mrs. Ferris attended business school beginning in December, 1951, and accepted employment outside the home in September, 1952, some seven months before Anna Witzig died; therefore, the

majority states, Mrs. Ferris ceased to furnish companionship and care.

The majority is trying to conjure up some obligation to stay with Mrs. Witzig all the time, and to take care of her hour by hour. The evidence clearly supports the trial court's finding:

"That ANNA C. WITZIG was an unusually active and vivacious woman until the time of her last illness which was of less than two weeks duration. She was active in both the Eastern Star and Daughters of the Nile, participating in both the meetings and the social functions of those organizations; that she seldom, if ever, missed a meeting or social function of these organizations except when she was away from her home; that she enjoyed traveling and did travel, not only in and about Seattle, but also frequently in and about the Pacific Northwest, and into Canada and California; that her travels and visiting kept her away from her home more than one-third of each year; . . . "

Anna Witzig did not want to be waited on. There is no reference to one single instance of any inconvenience to her resulting from Mrs. Ferris's employment. From the outset of the relationship she (to quote another finding by the trial court)

". . . reserved one bedroom in her home for her exclusive use, and took complete care of this room herself. That the plaintiffs [appellants Ferris] and their daughter had the use of the rest of the seven room home and were free to entertain and use this home as they would their own. That ANNA C. WITZIG furnished her own food, did her own cooking separately from the plaintiffs' family, and washed her own dishes. That ANNA C. WITZIG did at least a portion of her own laundry. That these arrangements continued until the death of the late ANNA C. WITZIG."

Companionship does not mean constant association. Indeed, the trial court found that at all times while the Ferrises and Anna Witzig were living together the Ferrises "were free to carry on their normal lives" and

". . . to come and go as they saw fit and were free to take week-end excursions or vacations without giving any special consideration or making special provisions for the late ANNA C. WITZIG. In December of 1951, EVELYN B. FER-

RIS enrolled in a business school and attended said school regularly. That in September of 1952, EVELYN B. FERRIS took a full time job and no special arrangements were required for the care of the late ANNA C. WITZIG."

No special arrangements for her care were required, because the "unusually active and vivacious" Anna C. Witzig took care of herself and had done so from the very beginning of the relationship with the Ferrises. It is significant that the trial court attached no importance to that fact, because, in the holding that the Ferrises were entitled to $225 a month for their services, the court made no distinction as to the value of Mrs. Ferris' services before and after she accepted employment outside the home.

The fact that Mrs. Ferris endeavored to help make ends meet by taking employment outside the home does not establish a breach of the contract, nor is it additional evidence of abandonment of the contract.

The majority arrives at a conclusion of abandonment and breach of contract by the Ferrises on what seems to me very flimsy and inconclusive evidence. I am unable to draw such conclusions from any findings of fact made by the trial court. Unless the majority is prepared to say that reasonable minds cannot differ on the issues of abandonment and breach of contract, we should remand the case, advising that the trial court erred in finding that no contract was established but that the issues of breach and abandonment by the Ferrises are yet to be determined. If there was a breach or abandonment by the Ferrises, a judgment of dismissal as to the first cause of action should be entered; if there was no such breach or abandonment, then the Ferrises would prevail on the principal issue, their right to Anna Witzig's estate. In that event the further issue of the validity of the gift of five thousand dollars by Anna Witzig to the Blumhardts must be decided.

That seems to me the proper disposition of the appeal if the issues of abandonment and breach are to be considered; but my own views are that the Ferrises proved a contract and performance by themselves under that contract, and

that they are entitled to be placed in the position they would have been in if Anna Witzig had performed the contract. That would lead to an examination of the issue of the validity of Anna Witzig's gift to the Blumhardts, an issue which neither the trial court nor the majority decided, the former because it held that there was no contract, the latter because it holds that the contract was abandoned or breached.

The facts on this issue, as found by the trial court, are that Anna Witzig became afraid that she might not always have a place to live with the Ferrises, and came to believe that if she moved from the home she had conveyed to them she would not be allowed to return. (This deals with a state of mind, not with an actually existing state of facts.) The court further found:

"That prior to August, 1951, the Blumhardts were living in a one bedroom home in Longview, Washington. That ANNA C. WITZIG enjoyed the company of the Blumhardts, referred to them as her children, and felt that she was welcome in their home. That ANNA C. WITZIG wanted the Blumhardts to purchase a larger home so that she would have a room of her own in their home and a place to live should she be unable to continue to reside with the plaintiffs; that ANNA C. WITZIG looked at various houses in Longview, Washington which were for sale. At, on or about August 6, 1951, ANNA C. WITZIG transferred $5,000.00 to the Blumhardts for the purpose of enabling them to purchase a home in Longview, Washington. That a home was purchased by the Blumhardts with the aid of this $5,000.00 and that this home was the choice of ANNA C. WITZIG. That ANNA C. WITZIG frequently went to this home and stayed there in what she referred to as 'her room.' That these visits to the Blumhardts were often of several weeks duration and that she spent approximately one-third of each year with the Blumhardts."

The Blumhardts contend that, if there was a valid contract, the Ferrises were to receive only that property which remained at the death of the Witzigs (or, as Anna Witzig put it, "whoever is with us when we pass on gets what we have"); hence Anna Witzig could do what she wished with her money during her lifetime. They cite no authority for

that statement and I find none. The courts say that, where the contract to will property covers only such property as the promisor may leave at his death, he is not restricted in the use, control, and disposition of his property during his lifetime, and transfers or conveyances before his death are valid *where there is no intent to defraud. Hatcher v. Sawyer* (1952), 243 Iowa 858, 52 N. W. (2d) 490; 68 C. J. 586, Wills, § 204.

Dealing specifically with the question of gifts in such a situation, the rule is that a contract to make a will does not prevent the making of gifts which are reasonable, bona fide, and not testamentary in effect, and *which are not made to circumvent the contract. Wagar v. Marshburn* (1941), 241 Ala. 73, 1 So. (2d) 303; *Bergmann v. Foreman State Trust & Sav. Bank* (1934), 273 Ill. App. 408; *Hatcher v. Sawyer, supra; Skinner v. Rasche* (1915), 165 Ky. 108, 176 S. W. 942; *Farmers Nat. Bank v. Young* (1944), 297 Ky. 95, 179 S. W. (2d) 229; *Eaton v. Eaton* (1919), 233 Mass. 351, 124 N. E. 37, 5 A. L. R. 1426; *Dickinson v. Seaman* (1908), 193 N. Y. 18, 85 N. E. 818, 20 L. R. A. (N. S.) 1154; *Bruce v. Moon* (1900), 57 S. C. 60, 35 S. E. 415; *Turner v. Theiss* (1946), 129 W. Va. 23, 38 S. E. (2d) 369; 57 Am. Jur. 156, Wills, § 176; 68 C. J. 587, Wills, § 204. See, also, *Swingley v. Daniels* (1923), 123 Wash. 409, 212 Pac. 729; *Sample v. Butler University* (1937), 211 Ind. 122, 4 N. E. (2d) 545, 5 N. E. (2d) 888, 108 A. L. R. 857.

The annotation on "Gift as a fraud on contract to will property," 20 L. R. A. (N. S.) 1154, points out that the case of *Dickinson v. Seaman, supra,* was the first in which the question involved was discussed from the viewpoint of the reasonableness of the gift in view of the entire property possessed by the promisor. The annotator points out that, prior to that time, the

" . . . decisions involving the validity of a gift made by a person under contract or covenant to will all his property to a certain person are practically uniform in holding that such an agreement does not prevent the making of absolute bona fide gifts during the lifetime of the contractor or covenantor. However, the gift must be absolute, and not

in effect testamentary, and *must not be made for the express purpose of defeating the contract or covenant.*" (Italics mine.)

From the application of these principles of law to the trial court's findings of fact on this issue, it might well be concluded that Anna Witzig thought the gift of five thousand dollars insured her a place to stay in the event of trouble with the Ferrises. However, as I have heretofore indicated, much additional evidence was introduced by the Blumhardts themselves, to the effect that Anna Witzig had determined, prior to making the gift, that the Ferrises were to get no more of her property and she was going to give it all to the Blumhardts. Without marshaling all of that evidence, and conceding the accuracy of the trial court's findings on this issue, I am convinced that the predominant evidence is that Anna Witzig's motive was not only to help the Blumhardts but to defeat and circumvent her contract with the Ferrises, and that, consequently, the five-thousand-dollar gift should be set aside and the Blumhardts directed to return the five thousand dollars to the estate of Anna C. Witzig, deceased.

My basic disagreement with the majority's holdings is on the issues of abandonment and breach of contract. Procedurally, I question whether we should decide the case on issues not presented to, or passed upon by, the trial court.

DONWORTH and WEAVER, JJ., concur with HILL, J.

---

April 24, 1956. Petition for rehearing denied.