## Farmers Nat. Bank Of Danville, Ky., et al. v. Young et al.

Jan. 25, 1944.

As Modified March 21, 1944.

96

Nelson D. Rodes for appellants.

Chenault Huguely, Henry Jackson, and Clay & Clay for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Margaret Young, an aged colored woman, died in July, 1937, at Danville, Kentucky. She was born in Kentucky and some time prior to the year 1900 she married Anthony B. Young, a Civil War soldier who since that

war had resided in the state of Nebraska. He had previously been married and had four children by a former wife. Margaret Young had no children. Anthony and Margaret Young resided in Nebraska until the death of Anthony Young in 1912. He left a will by which he devised to Margaret, his widow, a 160-acre farm in Nebraska and one-third of his personal property, and devised to his four children the residue of his estate consisting of a 40-acre farm and certain other property in the city of Grand Island, Nebraska, and two-thirds of his personal property.

In 1912, soon after the will of Anthony Young had been probated, his children threatened various legal actions against Margaret Young, their stepmother, with respect to their father's will and, as a compromise and settlement of the dispute, they entered into a contract which reads in part as follows:

"1. This contract and agreement made this 9th day of November 1912, by and between Margaret Young, of Grand Island, Nebraska, the widow of Anthony B. Young, party of the first part and her four step children, towit: Mrs. Lizzie Speece of Torrington, Wyoming, Mrs. Helena Buxton of Grand Island, Nebraska, and William A. Young and Ambrose B. Young both of Halsey, Nebraska, parties of the second part, Witnesseth:

"2. That Whereas the said Anthony B. Young, late of Grand Island, Nebraska, died in said city on the 25th day of April 1912, being in his lifetime seized of real and personal property and did in due form of law make and publish his last will and testament in writing containing devises and of which will paragraphs two and three read as follows towit:".

Then follows paragraph two of his will which bequeathed to Margaret Young the 160-acre farm and one-third of the personal property and recited that it was in lieu of dower and of any distributive share in her deceased husband's estate to which she would otherwise be entitled. Then follows the third paragraph of the will by which the testator devised the residue of his estate, personal and real, to his four children.

The third paragraph of the contract recites that whereas Anthony B. Young, after making the said will, died seized of property as aforesaid without revoking or altering the will and various disputes had arisen between

the heirs and Margaret Young in regard to various provisions of the will, and the parties thereto being willing and desirous that no legal proceedings be taken to break the terms of said will or to contest any of the various proceedings thereunder, and that the said estate be speedily closed without further litigation or delay. The fourth paragraph of the contract reads as follows: ''4. Now, therefore, the parties of the second part, in cinsideration of the sum of one dollar in hand paid them by the party of the first part, receipt of which is hereby acknowledged, do hereby agree, not to contest the will of said Anthony B. Young or appeal from the order admitting it to probate, or object to the inventory heretofore filed or to contest any of the proceedings thereunder and further agree to and with Margaret Young, the party of the first part, that they will help and assist her as they would their own mother, and in case her own funds, means or property become exhausted, that then and in that case, they will furnish her with a home, food, clothing, care, maintenance in sickness and in health or, at her option, give her a stipulated sum monthly in such an amount as may then be agreed upon, for and during the remainder of her lifetime.''

Paragraph five of the contract provides that in consideration of the covenants contained therein the first party, Margaret Young, agreed to convey by a quitclaim deed to the parties of the second part (stepchildren) all of her interest in and to the 40-acre farm and assign to them her interest in a certain note for the sum of $1,000 and pay the cost of probating and settling the estate of Anthony Young and to convey by quitclaim deed all of her interest in and to the property in Grand Island, Nebraska, and to sell, assign and transfer to the parties of the second part the 160-acre farm (devised to her in fee by the will of Anthony Young) reserving in the deed a full and complete life estate and the full use, income, possession and rights therein during her lifetime; and, it was further provided:

''And party of the first part further agrees that she shall and will make her will in manner and form heretofore agreed upon by the parties hereto which will in the first three paragraphs makes cash bequests of not to exceed ten hundred and fifty dollars and the fourth paragraph of the said will reads as follows, to-wit: 'Fourth: All the rest and residue of my estate, both real and personal including my residuary estate I do

hereby devise and bequeath to my four stepchildren Mrs. Lizzie Speese, Mrs. Helen Buxton, William A. Young, Ambrose J. Young, share and share alike to them and their heirs forever,' and that said bequests amounting to not to exceed the sum of $1050 and said fourth paragraph hereinabove convey all of the real and personal property of the party of the first part, and she hereby agrees not to revoke said will but that this shall be her last will and testament and has executed said will in duplicate to that end and has attached a copy thereof to each of the copies of this contract and agreement and that either of said copies may be used and considered as an original copy of said will, and that said will and each and all of the provisions thereof are and shall be considered a part of this contract the same as though fully inserted at length herein.''

The sixth and final paragraph of the contract reads: ''6.'' And the respective parties to these presents, each of them for himself and herself and for his or her heirs executors and administrators do hereby mutually covenant, promise, grant and agree to and with each other that in every respect and particular, even if not before herein especially provided for, they shall and will in all things abide by the terms of this contract and the will attached hereto and made a part hereof and carry the same into full execution and effect agreeably to the full intention and meaning of the provisions and intent of this contract and agreement and the execution of all of the instruments herein shall be done at once.''

After Margaret Young had divested herself of that portion of the property she had received under the will of her husband by making the conveyances and the contract, it appears from the pleadings that she had left personal property not exceeding the value of $4,000 and the life estate in the 160-acre farm in Nebraska. In 1913 Margaret Young returned to Danville, Kentucky, and purchased a home at a cost of $2,200. It is alleged in appellant bank's petition, and also pleaded in its answer to appellees' action, that Margaret Young received a pension of $40 a month from the United States Government as the widow of Anthony Young, and by her own work, economy and thrift, in February, 1924, she owned real and personal property of a value of $8,500 in addition to her life estate in the 160-acre farm in Nebraska. In February, 1924, Margaret Young conveyed her house and lot in Danville to appellant, Farmers National

Bank of Danville, Kentucky, trustee, and also transferred and delivered to the bank securities of a cash value at the time of about $5,700. The terms of the trust deed were, in effect, that Margaret Young should occupy the house and lot so long as she lived and the trustee was to pay her the net income from the trust estate semiannually so long as she lived and upon her death the trustee was to bury her in Grand Island, Nebraska, where her husband was buried, and pay the funeral expenses out of the trust estate and pay for a monument not to cost more than $200, and then the trustee was to convert the trust estate into cash and pay $500 to Margaret Young's nephew, Joseph Lancaster, and $500 each to her nieces, Rosa L. Fisher and Effie Kirkland, and pay $400 to the First Colored Baptist Church of Danville, Kentucky, and divide the rest of the trust estate equally between the Simmons University of Louisville, Kentucky, and the First Colored Baptist Church of Danville for the benefit of the Home Mission work of the church and the poor colored Baptist churches of Kentucky.

In the year 1927 the stepchildren, appellees, wanted to sell their remainder interest in fee in the 160-acre farm in Nebraska in which Margaret Young had retained an estate for life pursuant to the deed and contract entered into in 1912, and at their solicitation and request Margaret consented to the sale of the farm and joined with the stepchildren in the conveyance of it in July, 1927, for $6,600 cash, and out of the proceeds Margaret was paid $1,239.27 as the cash value of her life estate. In September, 1928, Margaret executed a second deed of trust to appellant bank as trustee and delivered to it $500 which was a part of the $1,239.27 that she had received as the cash value of her life estate in the Nebraska farm and this $500 trust item was to be invested by the trustee and the net income paid to Margaret during her life and at her death the corpus was to be delivered by the trustee to Katie Mays, a niece of Margaret. In May, 1937, Margaret entered into a third deed of trust with appellant bank as trustee and delivered to it $1,000 on which she was to receive the income during her life and upon her death the trustee was to deliver $500 of the corpus to Bessie Anderson, who had been living with Margaret and caring for her in her infirmity, and the balance of the trust estate was to be delivered by the trustee to the First Colored Baptist Church of Danville to be used to purchase a parsonage

for the church. About two months after the execution and delivery of the last trust deed Margaret Young died and the bank as trustee had her body taken to Nebraska and buried and purchased a monument to be placed at her grave.

On September 1, 1937, the stepchildren and step-grandchildren of Margaret Young filed their petition in equity in the Boyle circuit court by which they sought to recover the assets comprising the entire three trust estates in the hands of the bank created by the various trust deeds referred to above, and asked that same be adjudged to be the absolute property of the stepchildren and the step-grandchildren, except the $150 which was paid for the monument and the $400 to the First Colored Baptist Church, and $500 to Effie Kirkland, daughter of Polly Ann Caldwell, as set forth in the purported will of Margaret Young dated in 1912 which was attached to and made a part of the contract.

In December, 1937, the appellant bank as trustee instituted its equitable action in the Boyle circuit court to obtain the advice of the chancellor as to the disposition it should make of the trust property it held under the various trust deeds. Upon motion of counsel for appellees (stepchildren) the action filed by the bank as trustee subsequent to the filing of the action by the appellees was abated. The trustee appealed from the order of the court abating its action and this court reversed the order or judgment of the lower court and ordered the two actions consolidated and tried together. See Farmers Nat. Bank of Danville v. First Colored Baptist Church of Danville, 277 Ky. 521, 126 S. W. (2d) 1130. Upon a return of the case the two actions were consolidated and tried together. The proposed will of Margaret Young, which was incorporated in and made a part of the contract, was not formally executed or probated as a will but it is conceded that a contract to make a will is binding and an action may be maintained for a breach of such contracts. McAllister's Adm'r v. Bronaugh, Ky., 113 S. W. 821; Skinner et al. v. Rasche et al., 165 Ky. 108, 176 S. W. 942; Moore's Adm'r et al. v. Wagers' Adm'r et al., 243 Ky. 351, 48 S. W. (2d) 15. In the appellant trustee's petition in its action, and in its answer to the action of the appellees, it pleaded various alternatives; (1) that Margaret Young had the right to make the gifts she made by her irrevocable deed of trust and dispose of her property in the manner attempted by such deeds and

that the beneficiaries of such trust were entitled to all the property Margaret Young owned at her death; (2) if one or more of the gifts operated as a breach of the contract of 1912, still the only property·within the scope of that contract was the property that Margaret Young had received from the estate of her deceased husband, Anthony Young, but there was no breach of the contract with respect to property she had acquired from other sources, and further, that the $1,239.27 cash which she received as her life estate in the Nebraska farm was her individual property, even though it emanated from her husband's estate, and that passed under the gifts created by her deed of trust.

The appellant asserted in its various pleadings that Margaret Young drew a pension of $40 a month as the widow of Anthony Young, a Civil War veteran, and that this pension money with its accumulations and accretions, and perhaps other items of income independent of the estate of Anthony Young, constituted the principal portion of her estate and that this money or portion of her estate, personal or real, was not included in the operation of the contract will, which allegation the chancellor struck or sustained a demurrer thereto. The chancellor's ruling upon the demurrers, motions to strike, etc., were adverse to the contentions of appellants, based upon the premise, apparently, that the entire estate owned by Margaret Young at the time of her death, regardless of its source, was included and embraced in the 1912 contract and that appellees were entitled to her entire estate. The issues joined along the lines indicated and the chancellor approved of all acts of appellant trustee under the several deeds of trust created by Margaret Young that had been performed by the trustee subsequent to the death of Margaret Young and approved of all the disbursements made by the trustee after July 3, 1938, and also approved of the acts of the trustee in connection with the burial of Margaret Young and the marking of her grave. The court also directed the trustee to pay Effie Kirkland the sum of $500 out of the property in its hands, less the state inheritance tax, and approved of certain other disbursements and payment of certain items such as cost of the litigation, attorney's·fees, etc., which are not involved in this appeal. The chancellor further adjudged that neither Katie Mays nor the Colored Baptist Church of Danville, nor the Simmons University

has any right, title or interest in the property in the hands of the trustee, to which ruling of the court the beneficiaries above named excepted, and also excepted to so much of the judgment as awarded any part of the property in the hands of the trustee to William A. Young, Ambrose B. Young, Helena Buxton, Harry Speese, Miles Speese, Ethel Gardner, Beulah McBay, and Anna Rice, who are the children of Anthony B. Young, except Harry Speese and Miles Speese, who are the children of Lizzie Speese, deceased, or grandchildren of Anthony Young.

We are unable to agree with appellants in their contention that Margaret Young had the right to dispose of all the property which she might own at the time of her death regardless of whether it was a part of or had its source in Anthony Young's estate, or otherwise. Since contracts to make a will are binding, if the person so contracting or agreeing to make such will were permitted to dispose of the property by deeds of trust, gifts, subsequent devises, or otherwise, such would defeat the very purpose of the contract and render it a nullity. In Skinner v. Rasche, supra [165 Ky. 108, 176 S. W. 944], it is said: "The weight of authority is that a contract to devise does not prevent the making of gifts during the lifetime of the promisor; but such gifts must be reasonable, absolute, bona fide, not testamentary in effect, and not made for the purpose of defeating the contract to devise, nor having such effect. Dickinson v. Seaman, 193 N. Y. 18, 85 N. E. 818, 20 L. R. A., N. S., 1154, and note."

We think the deeds of trust here involved had the effect of a will and apparently made for the purpose of defeating the contract.

Proposition two, as to whether or not the contract of 1912, particularly paragraph four of the proposed will embraced in paragraph five of the contract, should be construed to include only the property Margaret Young owned at the time of her death which she received from her deceased husband's estate under the will, or whether it included all property she owned at the time of her death, regardless of its source, presents a more serious question. If paragraph four of the proposed will be given a literal or narrow construction it would include all the property Margaret Young owned at the time of her death, including property she had accumulated in-

dependent of the estate of Anthony Young. In paragraph two of the contract it is recited that whereas Anthony Young died in April, 1912, seized of real and personal property and did in due form make and publish his will, etc.; and, in paragraph three it is recited that whereas Anthony Young after making said will died seized of property as aforesaid and that the several parties to the contract being desirous that the estate be settled without further litigation or delay. We think this language clearly indicates that the contracting parties were dealing and contracting with respect to the estate of Anthony Young and such portion of it as he devised to Margaret Young, and in reality the contract was nothing more than a settlement of Anthony Young's estate and a compromise and settlement between the heirs and Margaret Young in respect of that portion of Anthony Young's estate she received under his will. It is clear from the contract that the children or heirs of Anthony Young were not questioning or disputing Margaret Young's rights to any property other than that she had received under the will of Anthony Young, nor were they threatening her with litigation with respect to any other property. In 68 C. J. page 574, the rule is thus stated: "Contracts to make a will or other similar disposition of property are subject to the same rules of construction as other contracts generally, and, to some extent, to those which govern the construction of wills. A construction will be given which will effectuate the real intent of the parties, as expressed in the instrument as a whole, and as it was made at the time the agreement was made, in the light of the circumstances surrounding the execution of the contract.''

Also, in the case of Moore's Adm'r v. Wagers' Adm'r, supra [243 Ky. 351, 48 S. W. (2d) 17], wherein there was involved the question of contract to make a will, the court used this language: "* * * The language used by the parties to the contract should be so construed as to carry out their intention. Conn v. Lewis, 5 Litt. 66; Hildrith v. Forrest, 4 J. J. Marsh. 217; Shultz v. Johnson's Adm'r, 5 B. Mon. 497; Morris Shoe Co. v. Coleman, 187 Ky. 837, 221 S. W. 242. The words used by them in the contract must be so construed as to carry out their intention in the light of the circumstances surrounding them at the time of its making.''

The case of Stewart v. Todd, 190 Iowa 283, 173 N. W. 619, 620, 188 N. W. 146, 20 A. L. R. 1272, involved

a contract made between a husband and wife to engage in the mercantile business which provided, among other things, that at the death of either party the one living shall fullfill all contracts, pay all debts, "and have *all* property left or owned by *either* party, *or* in the firm name." (Our italics.) About five years after the contract was made the wife inherited 136 acres of land from her parents. She later died leaving her husband surviving her and in the settlement of the estate the question arose as to whether or not under the contract the husband was entitled to the 136 acres of land which his wife had inherited. The Supreme Court of Iowa held that the contract did not include the property inherited by the wife and it did not pass to her husband upon her death, but it applied only as to the partnership property and its accumulations. It is to be noted that the contract with respect to the property the survivor would take, if given a literal construction, would have included the land inherited by the wife. The language "left or owned by either party, or in the firm name" literally purports to include two classes of property; namely, the partnership property and any other property independent of the partnership, owned by the survivor.

In view of the language of the contract, the subject matter expressed therein, and the circumstances surrounding the parties at the time of the execution of the contract, we are impelled to the conclusion that the chancellor erred in holding that all the trust property held by the trustee under the various deeds of trust was covered and included in the contract. We think the contract applies to such property only as Margaret Young received from the estate of her deceased husband under his will but had no application to property of Margaret Young derived from a source independent of her deceased husband's estate. The appellants insist that the $1,239.27 received by Margaret Young out of the proceeds of the sale of the Nebraska farm representing her life estate interest therein became the independent fund of Margaret Young and is not included in the contract. We cannot accept this contention, because this fund represents Margaret Young's interest in the land or estate of Anthony Young which he devised to her in his will, and was included in the subject matter of the contract.

Upon a return of the case each party should be permitted to file such pleadings or amended pleadings as

may be proper and take proof to ascertain what portion, if any, of the trust funds in the hands of the trustee was received by Margaret Young from the estate of her deceased husband, and that part, if any, which she may have received and accumulated from sources independent of her deceased husband's estate. When that is done the chancellor will adjudge to appellees such portion of the trust funds in the hands of the trustee as was derived from Anthony Young's estate, after, however, the payment therefrom of the specific bequests described in the contract which amount to $1050, and adjudge to the beneficiaries of the trust deeds that portion, if any, Margaret Young derived or accumulated from sources independent of Anthony Young's estate.

It is next insisted that the chancellor erred in permitting the children of the deceased stepchild, Lizzie Speese, niece of Margaret Young, to recover directly, since if Lizzie Speese were alive she would only recover as a creditor of Margaret Young. If the proposed will of Margaret Young had been formally executed and probated as a will, in that event Lizzie Speese would have taken under the will, if living, and likewise her children would have taken her share per stirpes under the will. But, since no will of Margaret Young was actually executed, appellee's action is founded on breach of contract and since Lizzie Speese, if living, would be entitled to a money judgment against the estate of Margaret Young, her children come within the same category. Appellants insist that since no personal representative had been appointed for Lizzie Speese, in the event she owed any debts or left creditors in the state of Nebraska such creditors might collect their debts from the trustee. Bryson's Adm'r v. Biggs, Ky., 104 S. W. 982, 983. We think that the trustee is entitled to protection asked against possible creditors of Lizzie Speese.

It is further insisted for appellant trustee that since Margaret Young might have left creditors the case should have been referred to the Master Commissioner to advertise for claims and proof of creditors, if any, against her estate, as required by section 430 of the Civil Code of Practice, as a protection to the trustee against possible creditors of Margaret Young. While the assertion of claims against her estate at this time may be improbable, yet it is possible, and therefore such steps should be taken as may be necessary to afford the trustee such protection.

For reasons stated the judgment is reversed and remanded for proceedings consistent with this opinion.

Whole Court sitting except Judge Rees who was absent.