## Camden et al. v. First Nat. Bank & Trust Co. Of Lexington et al.

October 11, 1949.

Rehearing denied December 16, 1949.

558

McDonald & McDonald for appellants.

Stoll, Keenon & Park for appellee.

JUDGE KNIGHT—Reversing.

The sole question involved in this appeal is the amount of compensation to which appellee First National Bank of Lexington is entitled as trustee under certain Trust Agreements hereinafter referred to. Appellants contend that this compensation is limited to 3% of the income from the trusts received and disbursed. The Bank contends that its commission is not so limited but should be calculated on 3% of both income and principal received and disbursed but payable out of income. The judgment of the lower court upheld the contention of the Bank and appellants prosecute this appeal from that judgment.

## Facts in the Case

By instruments dated December 12, 1935, and executed on December 19, 1935, Johnson N. Camden executed two Trust Agreements known in this record as Trust Agreement A, in which his daughter Tevis Camden (Sister Ignatia) was the life beneficiary with provisions for its disposition after her death, and Trust Agreement B, in which his daughter Anne Camden Stoll

and her children were the beneficiaries, with ultimate disposition upon their deaths. In both these Agreements, Agnes M. Camden, Tevis Camden (Sister Ignatia) and the First National Bank of Lexington, hereinafter called the Bank, were named as trustees. The trustees were authorized and directed to designate the said Bank as their agent to transact the current routine business of the trust, such as collecting and receiving monies and disbursing same on behalf of the trustees and, in effect, managing the details of the trusts. At the time of the creation of the trusts, both of which are irrevocable, the trustor assigned and transferred to the trustees certain securities listed therein giving the trustees the power to sell, assign and transfer such securities and other property as may come into their hands, to change the investment from time to time and to manage the estate in their hands according to their best judgment. Other provisions of the Trust Agreements prescribed the powers and duties of the trustees but since they are not involved here we deem it unnecessary to refer to them but will consider only those sections relating to the compensation of the trustees which give rise to this suit, which was brought under the Declaratory Judgment Act, Civil Code of Practice, Sec. 639a 1—12. In each of the Trust Agreements clause 7 provides as follows: "Seventh: The said Trustees and their successors shall serve without any sureties on their bonds. The First National Bank and Trust Company shall receive a compensation of three per cent (3%) of all monies received and disbursed, and all other Trustees shall receive as compensation the net sum of $100.00 per annum, all such compensation being payable out of the income from such trust fund."

Apparently the Bank, during the first twelve years of its administration of the trusts, construed the seventh clause above quoted as limiting its compensation to 3% of the income from the trust estate received and disbursed by the trustees, as during that period no charge had been made against the principal, only against the income. However on September 24, 1947, the Bank furnished to Tevis Camden (Sister Ignatia), beneficiary under Trust Agreement A, a statement of its transactions as trustee for a period covering the preceding year ending with that date. In this statement under the

head of "disbursements" there appeared the following entry:

¼% commission on market value of principal
assets as of 3/24/47......................... $991.57
and as of 9/27/47........................... $871.25

$1862.82

At the same time the Bank notified the beneficiary of Trust Agreement A that it was its intention to continue to make an annual charge of ½ of 1% on the value of the principal assets of the trust which it would pay out of the current income accruing to the trust until it shall have paid itself an aggregate of 3% of the market value of such principal assets valued as of the respective dates of the proposed payments to itself. In other words it informed the other trustees and beneficiary that it considered itself entitled to a 3% commission on the principal as well as the income from this trust estate but that instead of disbursing this commission to itself in a lump sum during or at the termination of the trust it would deduct from the income which was to be disbursed ½ of 1% per year for a period of six years thus making the total 3% commission on the principal of the estate to which it regarded itself entitled under its interpretation of clause 7 of the Trust Agreements.

To understand the basis of the Bank's contention and the justification which it advances for the additional charge to which it considers itself entitled it will be necessary to consider these Trust Agreements in connection with the will of Johnson N. Camden. It appears from the record that on or about November 21, 1935, Mr. Camden had a conference with Mr. Courtney, President of the appellee Bank, concerning his will which he was about to execute and at which conference it was arranged that the Bank would be named executor and trustee under this will. It is stated in the answer filed by the Bank that at this conference there was a discussion concerning the inter vivos trusts herein involved which Mr. Camden was about to create and with reference to the proposed compensation of the Bank in its fiduciary capacities. As a result of this conference Mr. Camden wrote a letter to the Bank which it claims has been lost or misplaced and is therefore not shown in the record. However, in response to that letter the Bank wrote the following letter to Mr. Camden:

"Mr. J. N. Camden       November 22nd, 1935
"812 First National Bank Bldg.,
"Lexington, Kentucky.

"Dear Sir:

"I have your letter of the 22nd in which you inform us that you have named this bank your trustee and that our compensation for administering the trust fund and business will be 3% upon the principal and 3% upon the income of all receipts and disbursements, as agreed between us yesterday.

"This is to confirm the terms of our compensation and we are sending this letter in duplicate in order that you may retain one copy, returning one to us after having signed the form of acceptance below.

    "First National Bank & Trust Company
    "Lexington, Kentucky
    "By W. H. Courtney, President."

On the bottom of the above letter Mr. Camden wrote the following memorandum and returned it to the Bank:

"To the First National Bank and Trust Co., "Lexington, Kentucky

"Gentlemen:

"The above terms are satisfactory and I hereby accept them and have made my will, naming you trustee upon the faith of it.

    "Yours very truly,
               "J. N. Camden
"Dated: November 25th, 1935."

As suggested in his letter Mr. Camden did execute his will and the sixteenth clause thereof contained the following provision, concerning the compensation of the executor and trustee: "* * * the First National Bank and Trust Company of Lexington, Kentucky, shall as executor receive a compensation of three per cent (3%) on all amounts received and disbursed, and also as trustee, after executorial duties have been performed by the executors, three per cent (3%) on all amounts received and disbursed. This compensation has been fixed by agreement between the First National Bank

and Trust Company of Lexington, Kentucky, and Johnson N. Camden, after conference with the President thereof, which was held on November 21st, 1935."

It is the contention of appellee Bank that the aforesaid letter of November 22, 1935, was intended by Mr. Camden and the Bank to be applicable to the compensation to be charged by the Bank both as executor and trustee under the last will and testament of Mr. Camden and as trustee under the two Trust Agreements involved in this litigation. The appellants, of course, contend otherwise and that is the question for our decision.

### The Agreements Construed

As we see it there is no connection between the letters which passed between Mr. Camden and the Bank, quoted above, and the Trust Agreements. These letters must have related only to the compensation to be paid to the executor and trustee under the will. While the letter of November 22 from the Bank to Mr. Camden does not specifically refer to the will his reply of November 25 does and in that reply he accepts the terms laid down in the Bank's letter and says he has made his will naming the Bank as trustee upon the faith of it. The Trust Agreements were executed almost a month later on December 19th and we do not know that they were even contemplated when the will was made although it is likely that they were, as part of Mr. Camden's plan for the disposition of his property before his death, which occurred in 1942. When the time came for the execution of these Agreements it must have been seen by the experienced officers of the Bank that the 7th clause was susceptible to the construction that it provided only for a commission on the income and there was an opportunity for clarification just as had been done with reference to compensation under the will. No proof was taken in the case, since a demurrer was sustained to the answer and counterclaim and if we accept as true, as we must on demurrer, the statement contained in the answer that these inter vivos trusts were considered in the conference of November 21 between Mr. Camden and Mr. Courtney at which compensation for the Bank was tentatively agreed on for all its fiduciary capacities, it still would be only a preliminary or collateral agreement and would not have bind-

ing and controlling effect in the face of the written agreement subsequently executed.. This principle requires no citation of authorities to sustain it.

It will be noticed that in clause 16 of the will of Mr. Camden it is provided that the Bank shall receive 3% on all amounts received and disbursed but does not specifically say that this shall include principal as well as income but does say the compensation has been arrived at by agreement at the conference of November 21st. The Bank was evidently doubtful if this was sufficiently clear that both income and principal were covered and that is no doubt the reason for the letter of November 22 from President Courtney to Mr. Camden in which he spells out and makes it plain that the Bank's compensation will be 3% on the principal and 3% on the income and insisted on the return of the signed acceptance by Mr. Camden thus fixing the terms by a written agreement between them. Nothing like that was done when the parties came to execute the Trust Agreements nearly a month later and with the previous experience with reference to the will fresh in their minds. If it was in the contemplation of President Courtney, who acted for the Bank, that it was to receive 3% on the principal as well as the income from the trusts it seems that he would have insisted on this point being made clear as he had with reference to the will.

We must therefore look to clause 7 of the Agreements without assistance from preliminary letters or conferences or other evidence inconsistent with its terms. We think the use of the words all monies in the Trust Agreements, which provide that the Bank "shall receive compensation of 3% on all monies received and disbursed," is persuasive, if not conclusive, that income only, rather than securities constituting the corpus of the trust, was to be considered as a basis for compensation of the Bank. The word "monies" used in this connection seems to connote money coming into the trust as income from the investments. As was said by this court in the case of Pohlman v. Pohlman, 150 Ky. 679, 150 S. W. 829, 830: "The word 'money' in its usual and ordinary acceptation means gold, silver, or paper money used as a circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate, and this popular and

564

well understood meaning should be given to the word when used in a will, unless, from a consideration of the entire instrument it was intended by the testator to have a broader meaning and to include notes, bonds and other securities.''

## Conclusion

Giving clause 7 of the Trust Agreement its natural, unstrained construction in connection with the entire written instruments of which it is a part it is our opinion that it limits the compensation of the Bank to 3% commission on the income only, received and disbursed by it.

The judgment of the lower court is therefore reversed with directions to enter one in conformity herewith.