Carrie **AINSWORTH** et al., Appellants.

v.

**S. J. AINSWORTH** et al., Appellees.

Court of Appeals of Kentucky.

Jan. 23, 1959.

Rehearing Denied March 13, 1959.

Waller, Threlkeld, Whitlow & Byrd, Paducah, W. J. Postlethweight, Marion, for appellants.

J. D. Ruark, Morganfield, for appellees.

CULLEN, Commissioner.

This is the second appeal of this case. The opinion on the first appeal is reported in Ky., 289 S.W.2d 517.

The questions in issue grow out of a certain provision of a property settlement agreement made by J. S. Ainsworth and his second wife, in 1932, when a divorce action was pending between them. The provision is:

"This agreement shall not in any way affect the rights of the children of the parties to this contract in the settlement of J. S. Ainsworth's estate."

Upon the first trial of this action (which is between Ainsworth's children by his second wife and those by his first wife), the circuit court held that the provision in question was not ambiguous, and construed it to mean that all of Ainsworth's

children were entitled to share equally in whatever estate Ainsworth left at the time of his death, but it did not bar his right to dispose of his property during his lifetime. Accordingly, the circuit court held that certain deeds executed by Ainsworth shortly before his death, conveying farm lands to each of his three children by his first wife, were valid; and that a joint bank account, with a survivorship provision, established in the name of Ainsworth and one of his daughters by his first wife, the major amount of which consisted of the proceeds of a sale of cattle made shortly before Ainsworth's death, could be retained by the daughter.

On the first appeal, this Court held that the questioned provision of the settlement agreement was ambiguous, and reversed the judgment with directions to receive extrinsic parol evidence to show the intent of the parties. Ky., 289 S.W.2d 517.

On the second trial in the circuit court, after receiving evidence designed to show the intent of the parties, the court came to the conclusion that the parties intended to impose upon Ainsworth a contractual obligation to treat all of his children equally in the disposition of his property, which obligation he could not escape by making transfers that were in effect testamentary. Accordingly, judgment was entered setting aside the deeds that had been made to the three children by the first wife, and declaring that the funds in the joint bank account must be considered part of Ainsworth's estate. The present appeal is from that judgment. The appellants are the children by the first wife.

J. S. Ainsworth's first wife died prior to 1908, leaving three daughters of the marriage. In 1908 he married his second wife, Josie, and during the course of this marriage they had four children. A number of conflicts arose during this marriage, and for a substantial portion of the time Josie did not live with J. S. at his home in Kentucky, but stayed on a farm which she owned in Illinois. As early as 1913 there was the threat of a divorce action, but no action was commenced until 1929, when J. S. sued for divorce. It was in connection with that action that the property settlement agreement was made. Judgment was entered approving the agreement, but no divorce was granted. Later, in 1935, in a separate action, a divorce judgment was entered.

One of the daughters by the first marriage, Carrie, remained single and continued to live with J. S. until his death in 1952. It appears that she took care of the household and also assisted him in the operation of his properties, although she devoted some of her time to the operation of a beauty parlor. J. S. built up an estate consisting of three farms, with cattle, and some town property. It appears that he had prospered in part from the proceeds of fluorspar deposits on his land.

Shortly before his death, at the age of 82 years, J. S. became seriously ill, and during this illness he conveyed a farm to each of his three daughters by his first wife. Previously, in 1946, he had established a joint and survivorship bank account in his name and that of his daughter Carrie, but before his illness this account carried a balance of only $1,500, and Carrie had written only a few small checks against it. After J. S. became ill, Carrie sold his cattle and deposited the proceeds, amounting to around $5,900, in the joint account, so that at the time of his death the account amounted to over $8,100.

With specific reference to the settlement agreement, Josie (the second wife) testified that early in the marriage "Mr. Ainsworth and me had an agreement that our children were to heir equally with his first wife's children in his estate * * *." She further testified that when the settlement agreement was being negotiated, Mr. Ainsworth sent to her, on two different occasions, drafts of an agreement which she refused to sign, because "It put me

out and didn't say anything about the children and I wouldn't sign them unless he stuck to his agreement that these children should heir his property the same as his first wife's children." Finally, a third draft containing the provision here in question was presented to her, and she signed it.

■ We believe this testimony is competent, see 32 C.J.S. Evidence § 960, pp. 901 to 915, and that it is sufficient to sustain the trial court's finding of fact as to the intent of the parties. Further support (although not of much weight) is found in the testimony of neighbors concerning statements made by J. S. to the effect that he "aimed" or "intended" or "wanted" all of his children to share equally in his estate.

The appellants argue that the questioned provision of the settlement agreement is not ambiguous, and means what it says, namely, that the agreement should not "affect" any rights the children might have. They further argue that there is nothing in the evidence concerning the circumstances of the parties at the time the contract was executed to indicate any intent to bind Mr. Ainsworth to make an equal division of his property among his children.

■ The argument that the contract is not ambiguous is precluded by our opinion on the first appeal, which is the law of the case.

As concerns the evidence, the appellants point out that J. S. was in financial difficulties in 1932, whereas his wife owned an unencumbered farm in Illinois; that the property settlement agreement refers to money "heretofore paid" to the wife, and obligates the husband to make support payments up to $300 per year during the minority of one infant child, the custody of which child was surrendered to the wife. From this, the appellants argue that the wife was really surrendering nothing by waiving all of her rights in the husband's estate, and she was benefiting by the husband's waiver of his

rights in her estate, and by the money theretofore paid to her and by the agreement for support payments; therefore, there would have been no reason for the husband to guarantee a share of his estate to their children as a condition of the agreement, and there was ample other consideration for the wife's waiver of her rights in his estate. This argument is not entirely without merit, but it goes only to the question of what the parties might reasonably have intended, and does not overcome the wife's testimony concerning what they actually did intend, as indicated by their previous agreement and by the negotiations leading up to the contract.

Considerable argument is made as to which of the two parties was at fault in causing the separation and ultimate divorce, but we do not see how this has any bearing on the meaning of the contract.

It is our conclusion that the judgment, as it concerns the determination of the intent of the parties, is supported by sufficient evidence and must be upheld.

The next question is whether the judgment is correct in setting aside the deeds and declaring the joint bank account to be a part of the estate.

■ In the opinion on the first appeal, Ky., 289 S.W.2d 517, at page 519, we said:

"If it is concluded that the contract was one by which Ainsworth agreed to devise his property in equal shares to all of his children, then it must be determined whether or not the subsequent transfers were, in effect, testamentary. We have held that a contract such as the one under consideration does not prevent the making of gifts during the lifetime of the promisor, but that such gifts must be 'reasonable, absolute, bona fide, not testamentary in effect, and not made for the purpose of defeating the contract to devise, nor having such effect.' Skinner v. Rasche, 165 Ky. 108, 176 S.W. 942, 944. See also Farmers' Nat. Bank of Danville,

Ky. v. Young, 297 Ky. 95, 179 S.W.2d 229."

Under the above definition, we think the deeds here were clearly testamentary in character and effect. Not only were they made when Mr. Ainsworth was at an advanced age, and suffering from a serious illness which shortly resulted in his death, but the grantees themselves testified that the conveyances were in the nature of gifts, and that the grantor had expressed the purpose of avoiding the payment of inheritance taxes. It is argued that as far as the deed to Carrie is concerned, it was intended to be in repayment for her services to her father, but there is nothing in the evidence to show that Mr. Ainsworth actually so intended, or to distinguish the deed to Carrie from those to her two sisters. It may be that Mr. Ainsworth did feel indebted to Carrie, but the deed transaction does not carry any evidences of an intent to recognize a debt.

With respect to the joint bank account, it is argued that because the account was established six years before Ainsworth's death, and because Carrie was assisting her father in the handling of his business, the survivorship provision of the account should not be considered testamentary in character. However, it appears that Carrie never treated the account as one in which she had a present ownership interest, and the purpose of the account was to facilitate the carrying on of the father's business. Carrie's interest was to be effective only upon survivorship. Most of the money in the account on the date of the father's death came from the sale of cattle during his fatal illness. We think the court was justified in finding that the giving to Carrie of a survivorship interest in this account was a testamentary kind of disposition.

It is argued, again, that Carrie was given an interest in the bank account in recognition of her services, but this is mere conjecture.

The judgment is affirmed.