Mary Archer ROBERTS, et al., Movants,

v.

Emma Archer CONLEY, et al.,
Respondents.

Supreme Court of Kentucky.

Dec. 15, 1981.

Rehearing Denied Feb. 16, 1982.

J. K. Wells, Marvin Walker, Wells, Porter & Schmitt, Paintsville, for movants.

James W. Bryant, Louisville, Dan Jack Combs, Pikeville, William A. Miller, Jr., James M. Clements, Louisville, for respondents.

STERNBERG, Justice.

This is an action for the specific performance of a contract to convey an interest in an estate.

Fannie Archer had five children, George P. Archer, James Archer, Martha Archer Rapier, Mary Archer Roberts, and Emma Archer Conley. George and his brother James predeceased their mother, Fannie Archer. George left surviving him two sons and a daughter, George P. Archer V, Raleigh R. Archer, and Martha Ann Archer Dameron. James left surviving him a daughter, Mary Ann Archer Jenkins. Martha, Mary, and Emma all outlived their mother, Fannie Archer.

In 1971, Emma and her husband Robert were suffering financial difficulties and sought assistance from her mother Fannie. To thus assist the Conleys in overcoming their financial embarrassment, they, together with Emma's siblings and their respective spouses, and Fannie entered into a written contract in 1971, wherein Fannie agreed to borrow $12,000 and pay it to Emma through her attorney in fact, Harry Laviers, for the purpose of paying her and her husband's existing indebtedness. The parties to the contract are: First party is Fannie Archer; second parties are George Archer and Margaret Archer, his wife; Martha Ann Archer Rapier and Joseph Rapier, her husband; Mary Archer Roberts and Thomas L. Roberts, her husband; and Mary Ann Archer Jenkins and Charles Jen-

kins, her husband; third parties are Emma Archer Conley and Robert Conley, her husband; and the fourth party is Harry Laviers, attorney in fact for all parties to the contract. So much of the contract as pertains to the issue is as follows:

"1) Parties of the second and third part are the heirs at law of party of the first part.

2) Over the years party of the first part has given substantial sums of money to parties of the third part, and is presently endorser upon various notes of party of the third part, totalling approximately $15,000.00. Parties of the third part have purchased a residence property in Louisville, Kentucky, assuming a mortgage indebtedness against said property, paying a minimal amount against a so-called down payment and deferring the balance, and is presently delinquent on the mortgage payments and owes approximately $6,000.00 of the deferred balance of the so-called down payment.

3) Party of the first part is desirous of attempting to assist parties of the third part in their financial problems without favoring parties of the third part any more than necessary in the ultimate distribution of her estate.

It is therefore, in consideration of the premises and the mutual covenants herein contained, agreed as follows:

FIRST: Party of the first part will borrow from the First National Bank of Paintsville, Kentucky, the sum of Twenty Two Thousand Dollars ($22,000.00) upon the security of a first mortgage upon certain property hereinafter described on Stafford Street in Paintsville, Kentucky, owned one-half (½) by party of the first part and one-half (½) by parties of the second and third part. The proceeds of said mortgage loan will be paid to party of the fourth part, as Attorney-in-fact for party of the first part, and she hereby makes and constitutes him her attorney-in-fact for such purpose, and party of the fourth part shall expend said funds for the purpose of paying existing indebtedness of parties of the third part upon which party of the first part is endorser

and other indebtedness of parties of the third part.

SECOND: Parties of the third part hereby convey and agree to convey to parties of the second part all of the undivided interest of party of the third part, Emma Archer Conley, to which she is now or may at any time hereafter be entitled in the estate left by party of the first part by her Last Will and Testament to her, or if she dies intestate under the Statutes of Descent and Distribution, together with all the reversion and reversions, remainder and remainders, rent, issues and profits thereof, and of every part and parcel thereof and also the real estate, right, title, interest, property, possession, claim and demand whatsoever both in law and equity of parties of the third part, their heirs and assigns, in and to the Estate of party of the first part. Parties of the third part further agree for themselves, their heirs and assigns, that they will at any time hereafter make any further deeds, releases, conveyances, or other assurances of title which may be necessary to completely release and divest them of their interest in the Estate of party of the first part herein conveyed or agreed to be conveyed to parties of the second part, or which the parties of the second part, their heirs or assigns may desire.

THIRD: Party of the first part agrees that at the time of her death all of her property, both real and personal of which she dies seized, shall be willed by her to parties of the second part, either by new will or codicil to her existing will, and to the exclusion of parties of the third part and free and exempt from any claim of parties of the third part, their heirs or assigns.

FOURTH: Party of the first part, parties of the second part, and parties of the third part hereby make, constitute, and appoint party of the fourth part their true and lawful Attorney-in-fact for them and in their name and stead to execute to the First National Bank of Paintsville, Kentucky, for the purpose of

securing a loan as aforesaid to the party of the first part in the sum of Twenty Two Thousand Dollars ($22,000.00), a mortgage upon a certain house and lot on Stafford Street in Paintsville, Kentucky, more particularly described as follows:

One house and lot situated in East Paintsville, Kentucky, same being Lot No. 6 on the North side of Stafford Street and bounded and described as follows:

Beginning on Southwest corner of Lot No. 5, and running an East course a straight line 120 feet to the old division line between Frank Preston Heirs and Mary J. Stafford tract; thence a Northeast course with said Frank Preston Heirs' line 60 feet to the Southeast corner of Lot No. 7; thence West course 120 feet with the line of Lot No. 7 to Stafford Street; thence a South course with Stafford Street 60 feet to the place of beginning.

Being the same property conveyed to Ernest E. Archer and Fanny M. Archer, by Don G. Stafford by Deed dated August 29, 1917, and recorded in Deed Book 49 at page 81, Johnson County Records.

to execute in their name and stead the necessary note and mortgage to effect said loan and to receive and expend the proceeds of said loan for the payment of the debts of parties of the third part as hereinabove provided. Parties of the first, second, and third part further authorize party of the fourth part as their Attorney-in-fact to thereafter sell the above described real estate for such price as he shall deem proper and for this purpose he is authorized and empowered to use such time and advertising as he may deem necessary and proper in the sale of said property to obtain what he may consider the best price obtainable, and he is further authorized if he may deem the same necessary to contract with brokers for the sale of said property. After payment of the expenses of sale he shall apply the net proceeds thereof towards the payment of the aforesaid mortgage indebtedness, and if the net sale price shall exceed the amount of the then existing mortgage indebtedness, he shall expend the excess for the benefit of party of the first part. Such Attorney-in-fact is authorized to execute such deeds of conveyance with General Warranty, as may be necessary to effect such sale and in the exercise of all of the powers hereby conferred upon him to do all things which in his opinion are proper, nete and relevant thereto.

We hereby ratify all things that our said Attorney-in-fact shall legally do hereunder.

FIFTH: Parties of the third part agree to surrender all credit cards they may have of party of the first part's and to not hereafter use the credit of party of the first part for any purpose and not to borrow any further funds from party of the first part."

On October 4, 1973, two years or more after the execution of said contract, Fannie executed a will and, after providing for the payment of her debts and costs of administering her estate, disposed of her estate as follows:

"ITEM II. All the rest and residue of my property, real and personal, of every kind and description wheresoever situated which I may have or have the right to dispose at the time of my death, I give, bequeath and devise to my beloved daughters, MARY ROBERTS, MARTHA ANN RAPIER and EMMIE CONLEY, per stirpes, share and share alike.

ITEM III. In the event any of my daughters should for any reason be precluded from sharing in my estate then it is my wish and I direct that her (their) share pass per stirpes to that daughter's(s) surviving children.

ITEM IV. I specifically exclude the children of my deceased sons from this Will as they are otherwise adequately provided for."

By a will dated January 29, 1968, over three years prior to the execution of the contract, Fannie, after providing for the payment of her debts and the costs of ad-

ministering her estate, disposed of her estate as follows:

"ITEM TWO: All the rest, residue, and remainder of my Estate of whatsoever kind and wheresoever situate, I give, bequeath and devise to my children, MARY ARCHER ROBERTS, GEORGE P. ARCHER, MARTHA ANN RAPIER and EMMA ARCHER CONLEY, share and share alike, to be their absolutely, and forever.

ITEM THREE: The indebtedness of any or all of my children due me at the time of my death shall be deducted from the share or portion of such child, but in the event that the amount of such individual indebtedness of any one of my said children to my estate shall exceed the amount of the share or portion that such child shall be entitled to under the provisions hereof, then, in that event, such child shall pay the difference between his or her bequest and his or her indebtedness to my estate, to the executor of this, my last will and testament, for distribution to my other children as part of said residual estate.

ITEM FOUR: I hereby revoke all Wills and Codicils heretofore made by me."

Fannie was adjudged incompetent by a jury of the Johnson Circuit Court in 1974, and a committee was appointed to care for her and her estate. On April 18, 1976, Fannie died testate, a resident of Johnson County, Kentucky. On July 6, 1977, Fannie's two wills were both admitted to probate in the Johnson County Court, and Joseph Rapier, one of her sons-in-law, was appointed administrator, with the wills annexed.

On November 1, 1977, Mary and her husband, Thomas; Martha and her husband, Joseph; and the administrator, with the wills annexed, of the estate of Fannie Archer, filed suit in the Johnson Circuit Court against Emma and her husband, Robert, and against the living descendants of George and James. The plaintiffs therein sought specific performance of the contract making Mary and Martha the sole and only beneficiaries of Fannie's estate by requiring Emma and her husband, Robert, to convey to them any and all interest that they had in or to Fannie's estate and demanded such other and further relief as the court may believe just and proper. By an amended complaint filed May 10, 1979, Julia Ann Conley Morrow, Robert Franklin Conley, Jr., and Mary Martha Conley, the living children of Emma Conley, were made party defendants.

In granting plaintiffs' motion for summary judgment, the trial court concluded and adjudged, as follows:

1. "The Agreement is not ambiguous.

2. The intent of FANNY ARCHER and of the other parties to the above quoted agreement was that in consideration of the payment of her debts by the mortgage and sale of certain property of FANNY ARCHER and her children, the Defendants, EMMA ARCHER CONLEY and ROBERT CONLEY, her husband, and their children, JULIA ANN CONLEY, ROBERT FRANKLIN CONLEY, JR., and MARY MARTHA CONLEY, would be excluded from sharing in her estate, either through Will or Intestacy.

3. It was not intended by said Agreement to otherwise prevent FANNY ARCHER from disposing, by testamentary instrument or otherwise, of her Estate as she pleased."

Thereupon, the court ordered, adjudged and decreed that "the entire net estate of Fanny Archer, deceased, is, by virtue of said Contract and Will, vested exclusively in her daughters, the Plaintiffs, Mary Archer Roberts and Martha Ann Archer Rapier, and the Plaintiff, Joseph Rapier, Administrator, with the Will annexed, of the Estate of Fanny Archer, is directed to make distribution of said net estate accordingly."

Emma, together with her husband Robert and her children, appealed to the Court of Appeals of Kentucky, where it was held that the contract was for the conveyance of a mere expectancy and void as against public policy. It reversed the judgment of the Johnson Circuit Court and directed it to dismiss the complaint. This court granted review on June 9, 1981.

The issue presented to this court is whether the contract is one for the conveyance of an expectancy.

The consideration for the questioned contract was the financial assistance given by Fannie, Martha and Mary to Emma and her husband Robert. There is no impediment to lending assistance to a financially embarrassed daughter and sister. Such assistance can only take on the complexion of a desire to be helpful. No one challenges this expression of care and love.

The subject contract is twofold. Fannie agreed, for the stated consideration, that at the time of her death all of her property would be willed by her to Martha and Mary. Emma renounced any and all interest she may have in or to the estate of her mother Fannie for valuable consideration.

The respondents call our attention to the fact that the rule against conveyance of a mere expectancy of an inheritance grew out of the English common law, and that Lord Coke wrote, "If a son and heir bargains and sells the inheritance of his father, this is void, because he hath no right in himself." The courts have reasoned that "The thing sold must have an actual or potential existence. A hope or expectation of means founded upon a right in being may be the subject of the sale, because in such case there is a potential existence." *Wheeler's Ex. v. Wheeler*, 2 Met. 474, 59 Ky.Rep. 474 (1859). Thus, in the instant case, if the contract to sell is a contract between Emma, on the one hand, and Mary and Martha, on the other hand, for the conveyance of Emma's interest in their mother's estate, then, and in that event, Emma and Robert, her husband, may not be required to execute a deed to Mary and Martha for Emma's interest in her mother's estate. However, the contract to convey is between the mother (Fannie) and the daughter (Emma), not between sisters. The very basis on which the courts have held void an attempted conveyance of a mere expectancy of inheritance is therefore not present in the instant case. As a matter of fact, there is an actual right to convey (devise) a thing in being (property owned by Fannie).

A written contract to leave property by will to a particular person is valid and enforceable. *Farmers National Bank of Danville, Ky., v. Young*, 297 Ky. 95, 179 S.W.2d 229 (1944). In *Farmers* this court wrote:

"... Since contracts to make a will are binding, if the person so contracting or agreeing to make such will were permitted to dispose of the property by deeds of trust, gifts, subsequent devises, or otherwise, such would defeat the very purpose of the contract and render it a nullity ...."

In 94 C.J.S. Wills, § 114, the rule is thus stated:

"Contracts to make a will or other similar disposition of property are subject to the same rules of construction as other contracts generally, and, to some extent, to those which govern the construction of wills. The law does not view the renunciation of the right to revoke a will as a casual matter. A construction will be given which will effectuate the real intent of the parties, as expressed, in the instrument as a whole, and as it was made at the time the agreement was made, in the light of the circumstances surrounding the execution of the contract...."

It is logical that if a person can validly contract to leave property, a contract not to leave property by will to a particular person would likewise be valid and enforceable, since, in each instance, to devise or not to devise is dependent upon contract. There is such a contract in this action. As a matter of necessity, the trial court was called on to construe the contract and the two wills as they relate to each other and taking into consideration the status and background of the parties. Fannie had, over a period of years, given financial assistance to Emma and Robert, and it was her desire to continue helping them in their economic stress if she could do so without favoring Emma over Mary and Martha in the distribution of her estate.

Humans are not programmed robots, and one of the immutable laws of nature is that humans are inner-motivated, self-interested organisms. So it is with those who cry wolf, and after the wolf has been slain, no longer remember the benefactors.

The construction given the contract by the trial court that Emma could be excluded from sharing in Fannie's estate and that Fannie's estate vested exclusively in Mary and Martha is proper under the circumstances herein presented.

 Respondents, Julia Ann Conley, Robert Franklin Conley, Jr., and Mary Martha Conley, challenge the adequacy of the pleadings to warrant granting the relief ordered by the trial court. The complaint adequately sets forth the challenged contract and the wills of Fannie, with a demand that the terms of the contract be enforced. The principal objective of a pleading is to give to the opposing party fair notice of the essential nature of the claim presented and the type of relief to which claimant deems himself entitled. *Lee v. Stamper*, Ky., 300 S.W.2d 251 (1957). The conduct of the parties, as reflected by the record, leaves no doubt but that these respondents and their counsel were fully cognizant of movants' claims.

The respondents, Julia Ann Conley, Robert Franklin Conley, Jr., and Mary Martha Conley, children of Emma Conley, charge that their rights in and to the estate of their grandmother, Fannie Archer, are unaffected by the contract. The contract, insofar as it affects Fannie and her daughter Emma, is clear. It provides that at the time of Fannie's death all of her property, not part of it but all of it, of which she dies seized would go to Mary and Martha, to the exclusion of Emma. To emphasize the fact that Emma was not to share in Fannie's estate, the contract exempted Fannie's estate from any claim of Emma, her heirs or assigns. Fannie and Emma had a right to make a contract providing that Emma would not share in Fannie's estate, irrespective of the terms and provisions of either the 1968 will or the 1973 will. Hence Emma had no "share" that would pass to her children under the 1973 will.

Having held that the contract was not one for the conveyance of an expectancy of inheritance, and the contract being valid and enforceable, Emma's children have no claim to any part of Fannie's estate and are not necessary or proper parties to this action.

The decision of the Court of Appeals is reversed, and the judgment of the Johnson Circuit Court is affirmed.

PALMORE, C. J., and AKER, CLAYTON, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

All concur.